Belknap,
Sept. 6, 1901.

71  41
72  239

### CRAM v. LACONIA.

Damages sustained by any person by the discontinuance of a highway may be assessed against a town only when they are such as are not common to the public, but special and peculiar, and directly result from the discontinuance.

A discontinuance which does not disturb the highway in front of an abutter's premises and leaves him communication with the general system of streets is not a destruction or impairment of any vested right and furnishes no cause of action for damages, although resulting in a depreciation of the value of his property consequent upon diversion of travel and added inconvenience of access.

PETITION, for an assessment of damages alleged to have been sustained by the plaintiff in consequence of the discontinuance of a portion of Gold street, in Laconia. Trial by jury, and verdict for the plaintiff. Transferred from the November term, 1900, of the supreme court by *Chase*, J.

In April, 1894, the plaintiff purchased a parcel of land, abutting on Gold street, in that part of Laconia known as Lakeport, and erected thereon a building adapted for the business of selling groceries, etc. At the time the plaintiff purchased the land and erected the building, Gold street extended in an easterly direction from the plaintiff's premises to a junction with Union avenue, another street in the Lakeport district of Laconia. April 15, 1898, the city council discontinued the easterly end of Gold street, from the point of its junction with Union avenue westerly toward

the plaintiff's premises, thereby destroying that junction and leaving the remainder of Gold street dependent upon lateral streets for connection with Union avenue. The portion of Gold street upon which the plaintiff's premises abutted remained undisturbed, and other, but more circuitous, highway communication between Gold street and the general system of streets was left to the plaintiff. The discontinuance did not deprive the plaintiff or the public of access to his property over public highways, but made it less convenient by increasing the distance to be traveled in many cases.

All that the evidence tended to show, and all that the plaintiff claimed, was that some of the people residing in Laconia, Gilford, Alton, etc., northerly of the junction of Gold street with Union avenue, traded at the plaintiff's store prior to the discontinuance; that afterward, by reason of the discontinuance and the destruction of the junction, such people, in passing to and from Gold street, were obliged to go by way of other streets, on which were other stores where goods like those kept at the plaintiff's store were on sale; that, as a consequence, trade at the plaintiff's store fell off, and his property was rendered less desirable for business purposes and was reduced in value.

At the close of the plaintiff's evidence, and again at the close of all the evidence, the defendants moved to dismiss the petition. The motions were denied, and the defendants excepted.

*Stone & Shannon*, for the plaintiff.

*Jewett & Plummer*, for the defendants.

REMICK, J. Highways are established, altered, and discontinued for the public good. *Underwood* v. *Bailey*, 56 N. H. 187 ; *S. C.*, 59 N. H. 480. It must be presumed that the public good required the discontinuance in question. *Smith* v. *Boston*, 7 Cush. 254, 256. Public good involves, almost invariably, individual and sectional injury. In the make-up of society there are such diverse and conflicting interests that it is impossible to so regulate governmental action as to confer universal benefit. The general welfare is all that is attainable. To secure this is the chief object of government, and to submit to it, however injurious, with or without compensation according to circumstances, is the primary obligation of citizenship. For general injuries, or those which result indirectly from the mere operation of a public improvement, the law allows the citizen no compensation. These are part of the price he pays for the protection and privileges of government. It is only when the act of the public inflicts upon him some special, peculiar, and direct injury, that he is entitled to damage. The principle under-

lying these observations is elementary, is not disputed, and controls the present case. If the plaintiff's damages are special, peculiar, and direct, he has a right of action to recover them. If general and indirect, the law affords him no remedy. The rule sounds simple enough, and is easily stated. The difficulty lies in its application—in determining whether the plaintiff's damages are general or special. This is the sole question in the present case. To the solution of this question, the statute under which the petition is brought lends no aid. It simply provides that "the damages sustained . . . by the discontinuance of a highway . . . may be assessed," etc. P. S., c. 72, s. 4. Taken literally, the statute is broad enough to allow damages for all injuries, whether special or general. But it has been limited, by construction, in accordance with the principle already stated. In *Petition of Concord*, 50 N. H. 530, the court held: "It could not have been the intention of the legislature to give damages, upon a discontinuance, to any individual for inconvenience experienced by him in common with all the rest of the community. If the inconveniences suffered . . . differ only in degree, and not in kind, from those endured by the public generally, he cannot recover damages therefor. 'But if he suffers a peculiar and special damage, not common to the public,' and that damage is the direct consequence of the discontinuance, he may recover therefor under the statute." This construction was approved and followed in *Candia* v. *Chandler*, 58 N. H. 127, 128, 129, where the court again declared that only peculiar and special damages are recoverable under the statute. As a result of the construction placed upon it by these cases, the statute must be viewed as if it read: "Damages which are not common to the public, but are peculiar and special, and the direct consequence of the discontinuance, may be assessed," etc. While *Petition of Concord* and *Candia* v. *Chandler* thus serve to limit the general terms of the statute, and bring us back to the general principle stated at the outset, viz., that only special, peculiar, and direct damages are recoverable, they furnish no clear and definite rule by which to determine whether damages in a given case are general and consequential, or peculiar, special, and direct, and whether the plaintiff's injuries fall within the one class or the other. The almost stereotyped statement to be found in the cases, that for damages differing only in degree and not in kind from those endured by the public at large there can be no recovery, while for peculiar and special damages not common to the public recovery may be had, is so general and indefinite that, without the aid of the cases applying, defining, and limiting it, it is at best a most perplexing guide, as is evidenced by its fruitfulness as a source of contention, and by the difficulty which courts have encountered in its application—a

difficulty they have often testified to (*Smith* v. *Boston*, 7 Cush. 254 ; *Davis* v. *Commissioners*, 153 Mass. 218, 223 ; *Chicago* v. *Burcky*, 158 Ill. 103 ; *Heller* v. *Railroad*, 28 Kan. 625), and doubtless more often experienced.

No case has come to our attention in this jurisdiction where the court has made application of the rule to a claim for damages arising from a discontinuance of a highway. In *Petition of Concord*, 50 N. H. 530, the rule was stated, but the court expressly declined to make any application of it in the then stage of the case. So in *Candia* v. *Chandler*, 58 N. H. 127, there was a restatement of the rule, but no application of it to the specific facts. In neither case did the court undertake to decide whether the damages alleged were special or general, direct or consequential, recoverable or non-recoverable. But while there has been in this jurisdiction no direct application of the rule in any case for damage arising from the discontinuance of a highway, there are cases in our reports relating to the laying out of highways where the court has differentiated general and consequential from special and direct damages in a way to throw light upon the subject and aid solution of the question before us. In *Petition of Mt. Washington Road Co.*, 35 N. H. 134, damage was claimed, not only for injury done to the plaintiff's land by taking a portion of it for a highway to the summit of Mt. Washington, but also for injury to his livery business and property by diversion of travel from the plaintiff's bridle-path. The court, by *Perley*, C. J., said : For damages "not caused by the taking of the land for the road, but by the change which the public improvement introduces into the course of business, . . . the public is not bound to make compensation. . . . The damages awarded to the landowner are limited to the direct injury done to the land. . . . If . . . the public improvement, by causing a change in the course of business, . . . should occasion a loss, . . . he must bear that loss in common with others who are in a like situation. The circumstance that the public may require some interest in his private property to accomplish the public object, gives him no claim to indemnification for a loss not in any way caused by the taking of his property, but by the operation of the public improvement." These observations seem peculiarly applicable to the present case. Here, as there, the damage claimed is not for the taking of the plaintiff's land, or any direct invasion of his property, but, as distinctly appears from the case, for loss of business and depreciation of property, resulting from a diversion of travel occasioned by a legitimate public improvement.

We are also helped to a correct understanding and application of the rule by the cases in this jurisdiction relating to the set-off of benefits where land was taken for highway purposes. The gen-

eral rule on this subject is the same as the rule in respect to the allowance of damages, viz., that only special and peculiar benefits can be taken into consideration.    Applying this rule, it has been repeatedly held in this state that benefits from improved facilities of communication, favorable diversion of travel, increased trade, and appreciation of property, resulting from the establishment of a new highway, cannot be set off against damages, because they are general and not special benefits.    *Carpenter* v. *Landaff*, 42 N. H. 218 ;  *Whitcher* v. *Benton*, 50 N. H. 25 ;  *Adden* v. *Railroad*, 55 N. H. 413, 419 ;  *Woodman* v. *Northwood*, 67 N. H. 307.    If favorable diversion of travel and consequent increase of trade and appreciation of property, resulting from the opening of a highway, are general benefits, why are not unfavorable diversion of travel and consequent decrease of trade and depreciation of property, resulting from the discontinuance of a highway, general damages ?

Following these analogies drawn from our own reports, without other guidance, we should be brought to a conclusion adverse to the plaintiff.    But the precise question here presented has been frequently before courts of highest authority in other jurisdictions, with like result.

A case more frequently cited than any other is *Smith* v. *Boston*, 7 Cush. 254.    Like the case at bar, it was a petition under a statute essentially like our own, for the assessment of damages occasioned to the plaintiff's property by the discontinuance of a portion of a certain street in the city of Boston.    As in the case at bar, no part of the property in question abutted upon that portion of the street which was discontinued, and the property was still accessible by other public streets.    The conclusion of the court is well stated in the syllabus, as follows : " The discontinuance of part of a street in a city, by order of the mayor and aldermen, whereby the value of lands abutting on other parts of the street . . . is lessened, is not a ground of action against the city by the owner of such lands, if still accessible by other public streets."

*Davis* v. *Commissioners*, 153 Mass. 218, is also strongly in point. South street, in Northampton, was crossed by a certain railroad. The portion of the street occupied by the crossing was discontinued.    Before the discontinuance, the street was a thoroughfare, with numerous intersecting streets.    By the discontinuance, travel along the street, from both directions, was interrupted at the crossing.    The petitioners' premises abutted upon the street, but at a point some distance from the part discontinued.    The complaint was that the discontinuance cut off the direct route from the petitioners' premises to the principal business streets of Northampton, and made it necessary to resort to a circuitous route over other

streets, to the serious and permanent injury of the plaintiffs' property. Certainly these facts present as good ground for relief as those in the case at bar, but the court said: "We are of opinion that the petitioners would not be entitled to recover damages for the diminished value of their lands, that being a loss not peculiar to themselves, but the same in kind as that which is suffered by others who owned land situated upon the same street. . . . Although the doctrine may sometimes be rather harsh in its application to special cases, there are sound reasons on which it rests. The chief of these reasons are, that to hold otherwise would be to encourage many trivial suits, that it would discourage public improvements if a whole neighborhood were to be allowed to recover damages for such injuries to their estates, and that the loss is of. a kind which purchasers of land must be held to have contemplated as liable to occur, and to have made allowance for in the price which they paid." Other Massachusetts cases to the same effect might be reviewed, but it is sufficient to say that the doctrine announced by Chief Justice *Shaw*, in *Smith* v. *Boston*, has been steadfastly adhered to in that jurisdiction, after the fullest re-examination.

The doctrine of that case has nowhere found abler exposition than in *Heller* v. *Railroad*, 28 Kan. 625. In that case the petitioner had bought land on an established street and erected buildings which were occupied for business purposes. At the time of the purchase there was more travel on that street than on any other street in that part of the city. Action was taken to discontinue a portion of the street, away from the plaintiff's property, and it was complained that the discontinuance would divert a large and increasing amount of travel from the plaintiff's property, and render it of no value for business purposes and of small value for residence purposes. While the matter came up on a petition for injunction, the question in the present case was directly involved and fully considered. The following quotation from the opinion of Judge *Brewer* is peculiarly applicable: "Where a party owns a lot which abuts on that portion of the street vacated, so that access to the lot is shut off, it is clear that the lot-owner is directly injured. . . . The closing up of access to the lot is the direct result of the vacating of the street, and he, by the loss of access to his lot, suffers an injury which is not common to the public; but in the case at bar, access to the plaintiff's lots is in no manner interfered with. The full width of the street in front and on the side of the lots is free and undisturbed, and the only real complaint is that by the vacating of the street away from her lots the course of travel is changed. But this is only an indirect result. There is nothing to prevent the travel coming by her lots

if the travelers desire it. The way to the heart of the city by her lots is a little more remote than it was before, but still other passage is open to all who wish to pass thereby. No one is compelled to stay away. Access to the lots is the same that it was before, so that the injury is only the indirect result of the action complained of, and it is an injury which, if it exists at all, is sustained by all other lots along the street west of the parts vacated. Travel by these lots may be diminished, travel on streets south may be increased, and to that extent property on such southern streets may be benefited thereby. The same result would follow if some other avenue of approach to the city were specially improved. . . . But surely that thus the tendency of travel in front of her lots was diverted, would give her no cause of action. The benefits which come and go from the changing currents of travel are not matters in respect to which any individual has any vested right, against the judgment of the public authorities." *Smith* v. *Boston*, 7 Cush. 254, and *Petition of Concord*, 50 N. H. 530, were cited in support of the foregoing views.

Another case in point, and especially instructive, is *Dantzer* v. *Railway*, 141 Ind. 604. In that case the court say, in substance, that, in addition to property in the soil of his lots, the abutter has a property right in the street,— that is to say, the appendant right of access, or easement of access, in front of his lots,— and that he should be allowed such damages as he suffers from obstruction of such right of access. "We think we may safely assert, however, that the obstruction of the easement of access need not always be upon the immediate front of the lot whose owner is affected, but that if the obstruction, though remote, renders access to such lot impossible, or impairs it in a substantial manner, at the point where it abuts upon the street, the property right of the lot-owner is invaded and he may recover. To illustrate this proposition: If a street were fully obstructed on either side of one's lot so that the lines of the lot could not be reached, access would be denied to the lot-owner, though the street in front of his lot had upon it no obstructions. The property rights of the lot-owner, as against the public, are coterminous with the lines of his lot; but that property right might be obstructed and its uses defeated by cutting off ingress and egress to and from such lines. In such case there should be and is a remedy. . . . There can be no doubt, however, that the overwhelming weight of authority . . . is in favor of confining the award for such damages to those who are deprived, in whole or in part, of access to that section of the highway immediately abutting upon or in front of their own real estate." It was considered that depreciation in the value of property by the added inconvenience of access thereto, consequent on

the vacation of a street at a point some distance therefrom, was an injury not different in kind, but only in degree, from that suffered by the community in general, and would not sustain a right of action for damages.

*Coster* v. *Mayor of Albany*, 43 N. Y. 399, was where a public bridge was removed, by reason of which it was made necessary, in order to reach the store of the plaintiff, to go over another bridge at a much greater distance. It was held that no action could be maintained. The court said: "No part of the bridge was on the property of the plaintiffs. They had no right or interest in it as property. There is left to the plaintiffs an approach to their property by the State-street bridge, though less near, less easy, less commodious. The damages to the plaintiffs' property from this cause are entirely indirect and remote."

In *Buhl* v. *Company*, 98 Mich. 596, 604, the court say: "A distinction may well be held to exist between the injury which results to an abutting owner, or another so situated that the means of ingress and egress to and from the premises are cut off by the discontinuance of a street, and one owning land upon another street, or on the same street at a distance from the part of the highway discontinued." It is further said, in effect, that the inconvenience caused to an abutting owner on a street by discontinuing another portion of the street, making travel to and from his premises less direct, is *damnum absque injuria*, being the same in kind that all the property suffers, and cannot be regarded as damages within the provisions of a statute providing for the payment of all damages consequent on the closing of streets.

In *Kean* v. *Elizabeth*, 54 N. J. Law 462, it was held that "a person owning lands upon a part of a street not vacated is not deprived of any vested rights in property for which she is entitled to compensation, by reason of such vacation."

In addition to the foregoing authorities to which special attention has been called, and to the same general effect, are *Castle* v. *County*, 11 Gray 26; *Hammond* v. *Commissioners*, 154 Mass. 509; *Stanwood* v. *Malden*, 157 Mass. 17; *Nichols* v. *Richmond*, 162 Mass. 170; *Clark* v. *Providence*, 10 R. I. 437; *Gerhard* v. *Commissioners*, 15 R. I. 334; *Seeley* v. *Bishop*, 19 Conn. 128; *Fearing* v. *Irwin*, 55 N. Y. 486; *Kings County Ins. Co.* v. *Stevens*, 101 N. Y. 411; *Houck* v. *Wachter*, 34 Md. 265; *Lutterloh* v. *Cedar Keys*, 15 Fla. 305; *Pearsall* v. *Supervisors*, 74 Mich. 558; *Adams* v. *Railroad*, 39 Minn. 297; *Brakken* v. *Railway*, 29 Minn. 41; *Barr* v. *Oskaloosa*, 45 Ia. 275; *Glasgow* v. *St. Louis*, 107 Mo. 198; *Whitsett* v. *Company*, 10 Col. 243; *Polack* v. *Trustees*, 48 Cal. 490

Eminent text-writers of highest authority have accepted in one form or another the view taken by these cases. In the text to

Elliott on Roads and Streets, at page 663, the rule is thus stated: "Owners of land abutting upon neighboring streets, or upon other parts of the same street, are not, however, entitled to damages, notwithstanding the value of the lands may be lessened by its vacation or discontinuance." And in a note on page 664 the same authors say: "We suppose that there is a right of compensation only when the easement of access is directly impaired." See, also, 2 Dill. Mun. Corp. (4th. ed.), s. 666.

But our attention has been called to several carefully considered cases which would seem, in their reasoning and application, broad enough, if followed in this jurisdiction, to warrant a recovery in the present case. *In re Melon Street*, 182 Pa. St. 397,— 38 Atl. Rep. 482; *Chicago* v. *Burcky*, 158 Ill. 103,— 42 N. E. Rep. 178; *Chicago* v. *Baker*, 86 Fed. Rep. 753; *S. C.*, 98 Fed. Rep. 830.

In *In re Melon Street*, it appears that Melon street was a cross-street, connecting Ninth and Tenth streets, in the city of Philadelphia. The parts of Ninth and Melon streets at their junction were discontinued. The property damaged was on Melon street, but not on the part discontinued. Melon street in front of the complainant's property remained as before, and the complainant could still go to and from all parts of the city by way of the remaining portion of Melon street and Tenth street, but was compelled to go further to reach points to the eastward. In the superior court recovery was denied, but not without a vigorous dissenting opinion which, on appeal, was approved and accepted. In both courts the question was exhaustively considered; and whatever view may be taken as to the correctness of the conclusions finally reached, it must be admitted that the case constitutes an important contribution to the legal discussion of the subject. Briefly stated, the conclusions of the court on appeal in substance were: that an abutter has a vested right, for the purpose of access to his property, not only to that portion of the street upon which his premises abut, with communication therefrom to the general system of streets, but also to the continuation of the remainder of the street, with all its connections, to the point where their continuance ceases to be of proximate and calculable advantage to his access, and becomes of only remote and incalculable advantage; and that it is for the jury to determine when this point is reached, and to give or deny damages accordingly. The court also held that while the discontinuance of a street anywhere within the limits suggested, impairing the means of ingress and egress, constitutes a peculiar and special injury for which an action can be maintained, yet, in estimating damages, no account can be taken of the depreciation of the property in consequence of the diversion of travel, nor of the inconvenience to which the property owner is

subjected in having to go by a more circuitous route in some cases, these being regarded as general damages, differing only in degree and not in kind from those suffered by the public at large.

*Chicago* v. *Burcky* and *Chicago* v. *Baker* give qualified support to the doctrine of *In re Melon Street* so far as concerns the scope of the abutter's vested right, and unqualified support to the doctrine of that case as to the exclusion of inconvenience and diversion of travel as elements of damage.

It is to be noted that according to these decisions,— the most favorable to the plaintiff to be found anywhere,— he can recover nothing for depreciation of property resulting from diversion of travel, loss of trade, and inconvenience. As these, manifestly, are the elements of damage upon which the plaintiff's claim and the jury's award were based, there is but little left for the plaintiff in any event. But *In re Melon Street*, so far as favorable to the plaintiff, does not commend itself to our judgment. The doctrine that the abutter is entitled to damages arising from discontinuance of any part of the street, interfering in any degree with any means of access to his property, with no limit but the rule of remoteness, and this although the street in front of the abutter remains undisturbed and he still has communication therefrom with the general system of streets, strikes us as unsound in principle, difficult of application, and opposed to the great weight of authority. To test the principle, suppose a street is five miles long ; that at one end is the plaintiff's residence, and at the other is his place of business ; that half way between a short section of the street is discontinued, compelling the plaintiff, at that point, to make a circuit of a mile before coming back into the street again, and increasing by about that much the distance to be traveled in going and coming. Here is a substantial interference with the means of access to both his place of business and his residence, in the broadest sense of the term, and substantial damage as well; yet all would admit that it is not such a discontinuance, and not such an interference with the right of access, as would entitle him to compensation. Bring the discontinuance and its enforced circuit within a mile, and yet closer,— within a half or a quarter of a mile, or even within fifty rods of the complainant's property,— and everybody would still agree that it was not such an interference with the right of access as to afford ground for recovery. At what point, then, is the province of the jury to attach? When it attaches, by what rule are they to determine when impairment of access is proximate and when it is not? Shall it be by rule of distance, or one depending upon the degree of impairment? Reflections like these satisfy us of the impracticability and practical impossibility of upholding the doctrine of *In re Melon Street*, and at

the same time preserving anything like intelligent and systematic administration of justice with respect to this class of claims. And when to the difficulty and confusion from this source are added the confusion and difficulty which would inevitably follow from requiring the jury to so draw the line as to exclude damages from diversion of travel and inconvenience; and, finally, when we consider the multiplicity of suits of every degree of remoteness to which the public would be subjected by such a rule,—in itself "an intolerable evil" (*Shaw* v. *Railroad*, 159 Mass. 597; *Quincy Canal* v. *Newcomb*, 7 Met. 276),— we are convinced that the legislature did not intend to so enlarge the abutter's rights.

The sounder and better doctrine, in every way, is that declared in *Smith* v. *Boston* and the long line of cases following it to which we have called attention, viz., that a discontinuance which leaves undisturbed the highway in front of the abutter's premises, and leaves him connection therefrom with the general system of streets, is not a destruction or impairment of any vested right, and furnishes no cause of action for damages. *Petition of Concord*, 50 N. H. 530, and *Candia* v. *Chandler*, 58 N. H. 127, when correctly understood, are in harmony with this latter view. To be sure, in *Petition of Concord* the court say that the statute is "broad enough to include persons whose lands do not abut on the highway." But this language must be understood in the qualified sense in which the same view is expressed in *Smith* v. *Boston*, where the court say: "We do not mean to be understood as laying down a universal rule, that in no case can a man have damages for the discontinuance of a highway unless his land bounds upon it; although as applicable to city streets, intersecting each other at short distances, it is an equitable rule. A man may have a farm, store, mill, or wharf, not bounding on a street, but communicating with it by a private way, so situated that he has no access to his property but by the public way. If this is discontinued, he must lose the benefit of his estate, or open a way at his own expense, which might be a direct and tangible damage consequent upon the discontinuance of the public way, and we are not prepared to say that he would not have a claim for damages under the statute." And in *Dantzer* v. *Railway*, 141 Ind. 604, where the court say: "We think we may safely assert, however, that the obstruction of the easement of access need not always be upon the immediate front of the lot whose owner is affected, but that if the obstruction, though remote, renders access to such lot impossible, or impairs it in a substantial manner at the point where it abuts upon the street, the property right of the lot-owner is invaded, and he may recover."

Undoubtedly, the discontinuance of any part of the street, although away from the complainant's premises, which has the effect

to destroy or impair the portion of the street upon which he abuts as a means of access, by cutting it off from communication with the system of streets, would be actionable — not, however, because of the discontinuance of the street away from the plaintiff's premises, but because of the practical discontinuance of the part upon which he abuts, as an effect of the actual discontinuance of the part away. This involves no qualification or extension of the rule, but is merely upholding it in its integrity. That the language of the court in *Petition of Concord* was used in the limited sense expressed in *Smith* v. *Boston*, appears probable from the fact that the circumstances in *Petition of Concord* brought the latter case squarely within the possible exception suggested and illustrated by Chief Justice *Shaw*, whose opinion in *Smith* v. *Boston* was evidently made the basis of the decision in *Petition of Concord*. And this probability finds confirmation in the qualified language employed by the court in *Petition of Concord*, where they say : " All that the court now decide is, that the commissioners were mistaken in supposing that in no possible event could they legally award damages to a man whose land ' did not come to the road.' " What the court say elsewhere in the opinion, excluding general, and limiting recovery to peculiar, special, and direct damages, taking these terms in the sense in which they are employed in *Smith* v. *Boston* and other cases to the same effect, is inconsistent with an intention to allow general, indirect, and consequential damages, such as were allowed in the Melon-street case and cases following, and such as are claimed in the present case. What the court say in *Candia* v. *Chandler*, viz., that " the effect of the statute is to give to certain landowners vested rights in the continuation of a highway that has been laid out, that cannot be taken from them by a discontinuance of it except upon the payment of such damages as are occasioned them thereby," must also be understood in the limited sense expressed in *Smith* v. *Boston* and *Dantzer* v. *Railway*.

This review of the authorities establishes that they are practically unanimous upon the following points : (1) that the right of recovery for damages from discontinuance of a highway is limited to such damages as are peculiar and special to the claimant; (2) that damages resulting from diversion of travel, and inconvenience from having to go by a more circuitous route, are not special, but general damages, and not recoverable ; (3) that the abutter has a certain vested right in the highway upon which he is located, as a means of access to his property, for the destruction or impairment of which he has a cause of action ; (4) that special damages are those only which destroy or impair this vested right.

To this extent there would seem to be practical agreement. The conflict comes upon the question of the scope of this vested

right, and upon this controverted point *Smith* v. *Boston* and the long line of cases to the same effect declare what is believed to be the correct general principle, and the one most in accord with the analogies furnished by our own decisions and with the overwhelming weight of authority. There are no special facts in this case to distinguish it. The street in front of the plaintiff's premises remains intact, and from this portion of the street the plaintiff still has free communication with the entire system of highways. The only complaint is that the distance required to be traveled to reach his property, in some directions, has been increased, and that travel in front of his premises has been thereby diverted, trade diminished, and the value of his property lessened. These facts bring the case squarely within the principle of the authorities. If the result is a hardship to the plaintiff, it is a hardship which is suffered by all of the numerous owners upon the portion of Gold street not discontinued. This fact alone has been held sufficient to make the plaintiff's damages " general " in the sense which excludes recovery. *Dantzer* v. *Railway*, 141 Ind. 604; *Heller* v. *Railroad*, 28 Kan. 625; *Davis* v. *Commissioners*, 153 Mass. 222. Furthermore, the hardship is in measure only, and slight measure at that, different from the hardship to which the plaintiff would be subjected were we to follow the cases most favorable to him, since even these deny to him compensation for depreciation of property from inconvenience and diversion of travel. *Chicago* v. *Baker*, *supra*; *Chicago* v. *Spoor*, 190 Ill. 340; *In re Melon Street, supra.* At most, it is a hardship resulting from the mere operation of a public improvement, involving no taking of property and no interference with vested rights. As such, it falls within that class of general injuries, referred to at the outset, to which the few are ever being subjected for the good of the many, and for which the law allows no compensation but the privileges and protection of government, including the protection which the plaintiff, as a member of the public, has had in the past, and will hereafter have, from claims of a like general character.

*Exception sustained: verdict set aside: judgment for the defendants.*

CHASE, J., did not sit: the others concurred.