# THE GERMAN EVANGELICAL LUTHERAN SAINT LUCAS CONGREGATION OF BALTIMORE CITY, a Corporation,

## *vs.*

# THE MAYOR AND CITY COUNCIL OF BALTIMORE, a Body Corporate, and THE COMMISSIONERS FOR OPENING STREETS IN THE CITY OF BALTIMORE.

*Condemnation proceedings: closing streets; Baltimore City; damages; property not contiguous; church property; loss of membership.   Opening streets: increased facilities; when not assessable benefits.   Right of way over land of grantor: implied covenants; limit of right.*

In condemnation proceedings to close a street, by the Mayor and City Council of Baltimore, damages can not be legally demanded for consequential injury to property that is several squares distant and which has means of egress and ingress, independent of the street closed.                              p. 160

Section 175 of the Baltimore City Charter, regulating condemnation proceedings, and providing that, in allowing damages the commissioners are to take into consideration all the advantages, and the disadvantages, that the owner ought to be compensated for, is to be taken as meaning, for such as he ought

to be compensated for under the established rules of law and practice in such cases.                              p. 149

Increased facilities for travel, enjoyed by the owner of property in common with the rest of the community, because of the opening, etc., of a street, is not a proper element to be considered in estimating benefits for which he is to be charged.   p. 156

In considering the question of damages for the closing of a street, the financial loss sustained by a church, by reason of its loss in membership occasioned by such closing, is too difficult to estimate and too speculative to be taken into account.   p. 157

For the doctrine of implied covenant in a deed, as to a right of way over the grantor's lands to apply, the lands must be contiguous to the lot conveyed and the right of way can only be claimed as far as it reaches some other street or public way.
                              pp. 158-159

*Decided March 19th, 1914.*

Appeal from the Baltimore City Court.   (STUMP, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Edward L. Ward,* for the appellant.

*Joseph S. Goldsmith* and *Duncan K. Brent* (with whom were *S. S. Field, City Solicitor,* and *Benjamin H. McKindless, Asst. City Solicitor,* on the brief), for the appellees.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from the Baltimore City Court granting a motion of the appellees to dismiss the appeal of the appellant from the action of the Commissioners for Opening

Streets in the City of Baltimore. The Mayor and City Council of Baltimore passed an ordinance, known as No. 387, and approved on the 16th of August, 1909, which provided for the elimination of certain crossings at grade over the tracks of the B. & O. R. R. Co., between Camden and Ostend streets, for the construction and maintenance of bridges and approaches carrying Lee street, Hamburg street, Stockholm street and Cross street over the tracks of said railroad, and, amongst other things, for condemning and closing certain portions of a number of streets named, including Henrietta, between the east side of Eutaw and the west side of Howard street. It was the same ordinance which was before this Court in *Walters* v. *B. & O. R. R. Co.,* 120 Md. 644, but a wholly different question is now presented.

The appellant owns a property on the southwest corner of Henrietta and Eutaw streets, which fronts 155 feet on the former and 75 feet on the latter—running from Eutaw street on the east to an alley 20 feet wide on the west. The lot is improved by a church, a school house and a parsonage. The appellant contends that this property will be greatly damaged by the closing of this part of Henrietta street, and it endeavored to have the Commissioners for Opening Streets allow it damages for the injuries thereby sustained. The Commissioners refused to allow any damages and that refusal resulted in the appeal to the Baltimore City Court. Considerable testimony was taken in the lower Court by the appellant, tending to show that its property was materially depreciated in value by the closing of the part of Henrietta street— although it was in direct conflict with that offered by the appellees. The motion to dismiss the appeal, which was granted by the lower Court, was as follows: "The City contends that the appellant has not proved any damage to its property as a consequence of the closing of Henrietta street, between the east side of Eutaw street and the west side of Howard street, of such nature as to entitle it to any award in this case, and therefore prays that the appeal be dismissed."

The appellant's property does not abut on the portion of the street which was closed, but is on another square which is bounded on the north by Henrietta street, on the east by Eutaw street, on the south by Hamburg street and on the west by Warner street, there being also an alley 20 feet wide which runs from Hamburg to Henrietta street at the west side of the appellant's property. The part of Henrietta street which is closed is east of the intersection of Henrietta and Eutaw streets, both of which are 66 feet wide. The ingress to and egress from the property has not been affected, but the direct approach to it from the east by way of Henrietta street is cut off and requires a more circuitous route. There were 10 or 12 tracks of the B. & O. R. R. Co. which crossed Henrietta street at grade, between Eutaw and Howard, before Henrietta street was closed. The access from the north, south and west have not been affected, and there will be two overhead bridges crossing the railroad tracks within a few squares of the property when the proposed improvement is completed.

When the location of the appellant's property is borne in mind, and it is also remembered that this is a condemnation proceeding into which the appellant has come, there cannot be much difficulty in reaching a correct conclusion under the decisions of this and other Courts. The provisions of section 40 of Article 3 of our Constitution that the General Assembly "shall enact no law authorizing private property to be taken for public use, without just compensation," etc., have been before this Court many times, and although the Constitution does not declare what rights shall be regarded as property, or what shall constitute a "taking" within its meaning, there are decisions which are conclusive of those questions. In the familiar case of *O'Brien* v. *Balt. Belt R. R. Co.,* 74 Md. 363, CHIEF JUDGE ALVEY, in delivering the opinion of the Court, said: "In such case as this, therefore, it would seem to be clear, both upon principle and authority, that there is no such taking of private property for public use as is contemplated by the Constitution of the State; and hence there

is no ground for any preliminary proceeding by way of con-
demnation." O'Brien was the owner of a lot of ground and
improvements thereon, situate on the east side of Howard
street, between Camden and Lee streets, and conducted there
a livery stable business. His bill alleged that the railroad
company was about to dig up the west half of the bed of
Howard street, in front of his property, to a depth of from
ten to twenty-four feet, below the then surface of the street;
that it was an open cut and, when made, Howard street, be-
tween Camden and Lee, would be destroyed as a public high-
way to the extent of the cut, and devoted to the exclusive use
of the railroad company. The plaintiff sought to enjoin the
defendant, and the case was before this Court on an appeal
from an order refusing to grant the injunction. The Court
referred to the unquestioned right and power of the Legisla-
ture, through the agency of the municipal government, to
change and alter the grades of existing streets, without lia-
bility to the abutting owners of property for the mere conse-
quential damages that may be suffered by reason of the
changed condition of the streets, but said that that reason,
applicable to the change of grade and the improvement of
streets for municipal purposes, did not apply in the case of a
grant of power to change the grade of and occupy the street
with steam railroad tracks, by a railroad company, having no
connection with the municipal government. Notwithstand-
ing the fact that that improvement was exclusively by and for
the railroad company, the Court announced the conclusion
stated above. In considering the question it said: "It is not
charged that there will be any invasion of or physical inter-
ference with any part of the plaintiff's lot, in the construc-
tion of the road. The most that he claims for is that he will
be deprived of the full use of the street, as it now exists, and
that his property will be depreciated in value, by the con-
struction of the road. This, however, is but an injury, to
whatever extent it may be suffered, *of an incidental or conse-*
*quential nature.* The construction of the railroad being
authorized by competent authority, it cannot be treated as a

public nuisance, and no right of action can arise against the company before it is known whether, and to what extent, damage may be sustained by the construction of the road in the bed of the street."

In the case of *Garrett* v. *Lake Roland El. Ry. Co.*, 79 Md. 277, the same principles were announced by JUDGE MC-SHERRY. Mr. Garrett was the owner of unimproved lots fronting 436 feet on the west side of North street, which was 36 feet wide between the curbs and 60 feet between the building lines. The railroad company erected in front of Mr. Garrett's property a stone abutment, forming an incline plane, to carry on its highest side the iron superstructure for an elevated road, and to serve on its surface as the northern approach to that elevated road. It was 83 feet, 2½ inches in length and 15 8/10 feet in width. It started at the street grade and gradually rose to a height of 9 feet—leaving a space between its western face and the curb line contiguous to Mr. Garrett's property of 9 feet, 8¼ inches. The erection of that structure was held not to be a taking of private property for public use within the meaning of the Constitution. See also *Poole* v. *Falls Road Ry. Co.*, 88 Md. 533.

Those cases should be sufficient to dispose of this appeal, unless there be some statute upon which the appellant can rely. In each of them the act complained of was exclusively for the benefit of the railroad company proceeded against, and the municipality had no such interest as it has in the execution of this ordinance. We will not now stop to consider the distinction between this case and those, by reason of the fact that this is a condemnation proceeding by the city, for even if the railroad company was conducting the proceedings, it could not be said that there was a taking of the appellant's property.

Section 6 of Article 4, entitled City of Baltimore, of Code of Public Local Laws (Baltimore City Code, 1906, section 6, sub-section 26), gives the Mayor and City Council power "To provide for laying out, opening, extending, widening, straightening or closing up, in whole or in part, any

street, square, lane or alley within the bounds of said city, which in its opinion the public welfare or convenience may require," and then continues: "To provide for ascertaining whether any, and what amount in value, of damage will be caused thereby, and what amount of benefit will thereby accrue to the owner or possessor of any ground or improvements within or adjacent to said city, for which said owner or possessor *ought to be compensated,* or ought to pay a compensation, and to provide for assessing or levying, either generally on the whole assessable property of said city, or specially on the property of persons benefited, the whole or any part of the damages and expenses which it shall ascertain will be incurred in locating, opening, extending, widening, straightening or closing up the whole or any part of any streets," etc.   Then section 175 (Baltimore City Charter) provides that whenever the Mayor and City Council shall by ordinance direct the Commissioners for Opening Streets to lay out, open, extend, widen, straighten or close up, in whole or part, any street, etc., the Commissioners "shall ascertain whether any and what amount of value in damages will thereby be caused to the owner of any right or interest in any ground or improvements within or adjacent to the City of Baltimore, for which, taking into consideration all the advantages and disadvantages, such owner *ought to be compensated.*"

Section 175 and the succeeding sections provide the procedure by which streets, squares, lanes or alleys can be laid out, opened, etc., and cannot be construed as intended to allow damages which were not previously allowed.   The part of section 6 which is quoted above was passed in 1838, Chapter 226, and was codified as section 837 of Article 4 of Code of Public Local Laws of 1860.   The same language was continued in section 806 of that Article of Code of 1888.   The Mayor and Council of Baltimore had, under the authority so given, passed an ordinance prescribing the manner of proceeding in opening, closing, etc., streets, as early as 1841,

(*Alexander* v. *Baltimore,* 5 Gill, 383), and when the present
charter was adopted, the provisions of section '175 were in
that ordinance; Baltimore City Code of 1893, Article 48, sec-
tion 6; but notwithstanding the provisions of section 6 have
been in the charter, and those of section 175, in the ordinance
passed in pursuance of the charter, for so many years, we
have been cited to no case, and are aware of none, which justi-
fies the contention of the appellant that in a condemnation
proceeding for opening, closing, etc., streets, damages can be
allowed for a property situated as that of the appelant is.    On
the contrary, the cases of *O'Brien* v. *Balt. Belt R. R. Co.,
Garrett* v. *Lake Roland El. Ry. Co.,* and *Poole* v. *Falls Road
Ry. Co.,* cited above, were decided while those provisions
were in full force, and no reference to them was made.    More-
over, by the terms of the statute, the Commissioners are only
entitled to allow the damage "for which, taking into consid-
eration all advantages and disadvantages, *such owner ought
to be compensated*"—meaning, of course, such as he ought
to be compensated for under the established rules of law and
practice in such cases.

As illustrating how other Courts have regarded the pro-
visions of statutes in such cases, we will refer to some of their
decisions.  *Smith* v. *City of Boston,* 7 Cush. 254, *Castle* v.
*County of Berkshire,* 11 Gray, 26, and *Davis* v. *County Com-
missioners,* 153 Mass. 218, were decided when there was a
statute in Massachusetts which provided that, "In estimating
the damages sustained by any person in his property, by the
laying out, altering or discontinuing of any highway, the
jury shall take into consideration all the damage done to the
complainant, whether by taking his property, or by injuring
it in any way," but that language was not deemed sufficient
by the Supreme Court of Massachusetts to entitle an owner
to compensation for depreciation of his property which did
not immediately abut upon the part of the highway which
was vacated.  In *Cram* v. *City of Laconia,* 71 N. H. 41, S.
C. 57 L. R. A. 282, and 51 At. Rep. 635, the statute in force

was, "the damages sustained * * * by the discontinuance of a .highway * * * may be assessed," etc.   The Court said: "Taken literally, this statute is broad enough to allow damages for all injuries, whether special or general.   But it has been limited by construction, in accordance with the principle already stated"—which was that only such damages as are not common to the public, but are peculiar and special, and the direct result of the discontinuance may be allowed. In *Enders* v. *Friday,* 78 Neb. 510, S. C., 15 *Am. & Eng. An. Cases,* 685, the statute had this provision: "Provided, that all damages sustained by the citizens of the city or village, or of the owners of the property therein, shall be ascertained in such manner as shall be provided by ordinance"; in *East St. Louis* v. *O'Flynn,* 119 Ill. 200, S. C. 10 N. E. 395, and 59 *American Reports,* 795, the statute provided: "Where property is damaged by the vacating or closing of any street or alley, the same shall be ascertained and paid as provided by law."   Those Courts declined to allow damages to those whose property did not abut on the highways closed.   In the *Illinois* case the Court cited *Chicago* v. *Union Building Association,* 102 Ill. 379, and *Littler* v. *Lincoln,* 106 Ill. 353, in the last of which it was said, "the rights or privileges of other proprietors in the plat, which the statute protects, are necessarily legal rights and privileges, and such parties cannot, therefore, be affected by the closing of streets not adjacent to their property, nor directly affording access thereto, and egress therefrom."   In *Howell* v. *Morrisville,* 212 Penna. 353, S. C. 61 Atl. Rep. 932, the Court refused to allow damages for vacation of a public road under the Act of 1891 referred to in that case, because it contained no express grant to property owners of the right to damages for vacation, nor any clear implication of an intent to increase the obligations of the cities or enlarge the rights or claims of property holders, and went on to say: "Even if the purpose of the Act were less plain than it is, the Court would not be justified in stretching its terms by a loose construction to cover the exceptional case

of vacation of roads.  The general rule is founded not only on sound reason, but also on sound policy and justice.  While it may be admitted that substantial injury may occasionally result from the vacation of a street, yet it is exceptional, and confined to closely built cities.  Even there, if damages are provided for, they should be most carefully hedged about to prevent the inevitable tendency to run off into speculative and shadowy claims that have no real foundation."

The appellant contended that what was said in *Mayor, &c., of Baltimore* v. *Smith and Schwartz,* 80 Md. 458, went far to sustain its position, but it seems to us, that in so far as it is applicable at all it has just the opposite effect.  We held in that case that the appeal from the assessment of benefits did not bring up for review the damages allowed, under the statute as it then existed.  After showing how the benefits are assessed, and the damages allowed, we said: "In other words, they take such property as is needed for the bed of the street and allow the respective owners compensation for it according to its *then market value;* they then direct that A, B and C, as owners of ground or improvements somewhere in or adjacent to the city, will be *directly* benefited *after the street is opened,* determine how much, and so assess them.  If there is a shortage in the benefit column, the account is balanced by the city.  It matters not whether A's property thus to be benefited is adjoining to or a part of the property taken for the bed of the street, or whether it is on another square on the street to be opened or in some other locality; if it will be *directly* benefited he is assessed accordingly, and called upon to contribute to the payment for said street to the extent he is so benefited.  It seems clear that the two transactions of fixing damages or compensation and of assessing benefits, are separate and distinct."  It is implied as clearly as could well be that in allowing damages *it does matter* whether the property to be paid for "is adjoining to or a part of the property taken for the bed of the street, or whether it is on another square on the street to be opened, or in some other locality,"

while in assessing benefits *it does not matter*. No case can be found in Maryland where damages have been allowed for property *not* "adjoining to or a part of the property taken for the bed of the street." When a part of a property is taken and damages are allowed for injury to the remainder, it is because by taking the part the value of the remainder is lessened, but damages are only allowed even for abutting property, not within the lines of the condemnation, when the owner is deprived of his right of ingress or egress, or there has been something done amounting to a taking of the property, as illustrated by the case of *Walters* v. *B. & O. R. R. Co.,* 120 Md. 644.

As the decisions are so numerous it will be convenient to refer to the text books which are one way, and it can be safely said that except in cases controlled by some special constitutional or statutory provision the decisions are practically unanimous against the appellant's contention. Where the vacation of the street is in front of the plaintiff's property or in the same block, so that his access is cut off entirely, the decisions hold either that it is a taking of the property, or at least that the owner is entitled to damages, and if under those circumstances his access is cut off in one direction, so as to put his property in a *cul de sac,* perhaps most authorities holds that he is entitled to damages. In 1 *Lewis on Em. Dom.* (3rd Ed.), sec. 203, that author, after having considered the other classes of cases, said: "The case now to be considered is where the vacation is in the next or some remoter block and the plaintiff has left access in both directions to the system of streets. To reach certain points in the direction of the vacation, the plaintiff must make a detour and this fact and the diversion of travel and the loss of a thoroughfare depreciate the value of his property. The decisions are nearly unanimous to the effect that in such case the plaintiff's property is not taken or damaged and that he cannot prevent the closing of the street or recover damages therefor. While this conclusion may be correct so far as the question

of a *taking* is concerned, its correctness may be questioned when, by virtue of the Constitution or a statute, compensation is given for property damaged or injured." In 2 *Elliott on Roads and Streets* (3rd Ed.), sec. 1181, it is said: "Owners of lands abutting on neighboring streets or upon other parts of the same street, at least when beyond the next cross street, are not, however, entitled to damages, notwithstanding the value of their lands may be lessened by its vacation or discontinuance." In 3 *McQuillin on Mun. Cor.*, sec. 1410, the rule is thus stated: "If the street directly in front of one's property is not vacated, but the portion vacated is in another block, so that he may use an intersecting cross street, although perhaps it is not quite so short a way nor as convenient, it is almost universally held that he does not suffer such a special injury as entitles him to damages. And this is so notwithstanding the new route is less convenient or the diversion of travel depreciates the value of his property."

In 27 *Am. & Eng. Ency. of Law* 116, it is said: "It is generally held that owners of property not abutting on the street vacated have no such property in the street as entitles them to damages for its vacation where there is still left means of communication with other streets, and whatever detriment or inconvenience they may suffer by the closing of the street they must bear in common with the community at large for the public convenience and welfare." In 37 *Cyc.* 193, it is said: "On the other hand many cases hold that the vacation of a highway in such a manner as to deprive an abutting owner of access to his property is a 'taking' of property within the Constitutional prohibition, for which compensation must be made. This right to damages does not extend to owners of land not abutting on the highway vacated, and accessible by other ways, unless the statute allowing damages is broad enough to include such persons." The summary of a note to the case of *Enders* v. *Friday,* 78 Neb. 510, as reported in 15 *Am. & Eng. An. Cases,* 685, is: "As a general rule property owners whose lands do not abut upon the portion of the

street vacated, and access to whose property is not cut off, are not entitled to compensation because of such vacation. This is especially true in the absence of a showing, on the part of the non-abutting owner, of a special and direct damage, instead of one merely suffered in common with the general public." In 3 *Dillon on Municipal Corporations* (5th Ed.), sec. 1160, on page 1842, that author says: "Many decisions declare that, as a general rule only property abutting on the portion of the street closed is specially damaged by the vacation, and that only such abutter can recover damages or compensation for the taking of this property. Hence, if the property of the abutter is *located on another street or on a different part* of the same street, he is not entitled to compensation or damages. In other States this limitation is not observed, and decisions are to be found to the effect that the owner of property which *does not abut* on the part of the street closed is entitled to compensation, provided he is able to prove special and peculiar damage." It will be well in passing to remark that the cases cited in the note in support of the last statement are *Chicago* v. *Baker,* 86 Fed. Rep. 753, *Chicago* v. *Burcky,* 158 Ill. 103, *In re Melon St.,* 182 Pa. 397, and *Highbarger* v. *Milford,* 71 Kan. 331, but it will be seen by an examination of them that the vacation left the property in a *cul de sac* and in some instances there were special statutes. The case of *Henderson* v. *Lexington,* 132 Ky. 390; *Same Case,* 111 S. W. Rep. 318, cited in that note, is an instructive one, and after discussing various questions in connection with the subject we have been considering, it is said: "Therefore the equitable and practicable rule is to limit the persons entitled to compensation and to be made parties, to the property owners abutting on the street, alley or highway proposed to be closed between the nearest streets intersected by the street, alley, or highway to be closed."

The cases cited by the above authors are very numerous. Whatever apparent conflict there is between them is more apparent than real. There can be no doubt that most of the

decisions rendered in cases where the facts are similar to those before us hold that the owner is not entitled to damages. In *Davis* v. *County Commissioners,* 153 Mass. 218, the Court said: "Although the doctrine may sometimes be rather harsh in its application to special cases, there are sound reasons on which it rests. The chief of these reasons are, that to hold otherwise would be to encourage many trivial suits, that it would discourage public improvements if a whole neighborhood were to be allowed to recover damages for such injuries to their estates, and that the loss is of a kind which purchasers of land must be held to have contemplated as liable to occur, and to have made allowance for in the price which they paid," and in *Nichols* v. *Richmond,* 162 Mass. 170, it was said: "The line has to be drawn somewhere, on practical grounds, between those who may and those who may not recover for damages caused by the discontinuance, in whole or in part, of a street or way; and it has been drawn so as to limit the right of recovery to damages which are special and peculiar and different in kind from those suffered by the public at large." The case of *Smith* v. *City of Boston,* 7 Cush. 254, is a leading one, and is relied on, not only in subsequent decisions in Massachusetts, but by many other Courts. In *Cram* v. *City of Laconia, supra,* the subject is thoroughly discussed and many of the cases considered. The Court after stating the facts in the case of *In re Mt. Washington Road Co.,* 35 N. H. 134, said: "Here, as there, the damage claimed is not for the taking of the plaintiff's land, or any direct invasion of his property, but, as distinctly appears from the case, for loss of business and depreciation of property resulting from a diversion of travel occasioned by a legitimate public improvement." In both cases that Court refused relief. In the last one it said that it was helped to a correct understanding and application of the rule by the cases in that State relating to the set off of benefits where land was taken for highway purposes; that "it has been repeatedly held in this State that benefits from improved

facilities of communication, favorable diversion of travel, increased trade and appreciation of property, resulting from the establishment of a new highway, cannot be set off against damages, because they are general and not special benefits." After citing a number of authorities it said: "If favorable diversion of travel and consequent increase of trade and appreciation of property, resulting from the opening of a highway, are *general* benefits, why are not unfavorable diversion of travel, and consequent decrease of trade and depreciation of property, resulting from the discontinuance of a highway, *general* damages?" That question is peculiarly appropriate here because in *Friedenwald* v. *Mayor, &c., of Baltimore,* 74 Md. 126, this Court said: "There can be no doubt about the general proposition that increased facilities for travel enjoyed by the appellant, in common with the community in general, is not a proper element to be considered by the jury in estimating benefits." Although we have not been heretofore called upon to pass the particular question involved in this case, we have in analogous cases announced the rule which is applicable. In *Houck* v. *Wachter,* 34 Md. 265, which was an action to recover damages for the alleged obstruction of a highway, CHIEF JUDGE BARTOL said: "All the authorities agree that to support the action the damage must be different, not merely in degree, but different in kind from that suffered in common, hence it has been well settled, that though the plaintiff may suffer more inconvenience than others from the obstruction, by reason of his proximity to the highway, that will not entitle him to maintain an action." The fact that that plaintiff "was obliged to proceed to his farm by a very circuitous route" was not sufficient to enable him to recover. In *Bembe* v. *Anne Arundel County,* 94 Md. 321, the *narr.* was sustained only because it distinctly alleged that the highway, with the bridge in question, was the *only* means by which the appellant had access to and egress from his farm, which consequently showed an injury differing in kind from that which other members of the community suf-

fered from the same cause, and the Court, through Chief Judge McSherry, in holding that the demurrer should have been overruled, took occasion to add: "Of course, if the appellant.—the plaintiff below—has any other way or road by which he can get to and from his premises, he cannot maintain this action, even though he is put to more inconvenience, or is required to travel a much greater distance in using the other highway." So in *Anne Arundel County* v. *Watts,* 112 Md. 353, the recovery was sustained because it was alleged and proved that the plaintiff was deprived of the use of the *only* public road which passed the points between which, the materials he was to use were to be hauled—he being under penalty to do the work within a limited time. Those and similar cases which might be cited were cases in which the defendants were not acting as authorized by the law, as the appellees are, yet the plaintiffs were required to show that the highways were the only ones they could use, in order to establish such special damages as entitled them to recover.

If the appellant's right to recover be on the theory that the closing of this part of Henrietta street has caused it to lose some of its church members, it would be extremely difficult, if not impossible, to fix such damages in dollars and cents by any known rule of law. A church member who would leave his church merely because he had to go a square or two further to get there than he formerly did would not, as a general rule, be a very serious loss to the church, but if any one did absent himself for that reason, how could the financial loss be estimated? Even if it could be proved that he had been paying so much per year, his death, removal or other change might deprive the church of that income at any time. Such loss would be of the most speculative character, and it is not perceived how the loss in membership could in other respects be considered as ground for damages. Moreover, it is an established fact in this case, that there are conditions existing in that part of the city which would necessarily affect this congregation. The uncontradicted evidence is that a consid-

erable part of the territory, on both sides of the railroad, from which this church would naturally have derived a good deal of its membership, is now mainly, and in some squares exclusively, occupied by colored people. It may be that the improvements made under this ordinance, of which this closing of Henrietta street is a part, is to some, possibly a large extent responsible for the change in the class of residents living there, but surely no one will contend that in assessing damages for closing a block of Henrietta street, all that is done or to be done under this ordinance is to be taken into consideration. We speak of such matters to show how impossible it would be to allow damages to cover such injuries as the appellant claims to have sustained, if we are to be governed by established rules of law and not be led off into what is pure speculation and beyond definite ascertainment. So far as affecting the value of appellant's property is concerned, it may be different in degree, but is not different in kind, from that of the owners of other properties situated in this neighborhood. If the appellant is entitled to damages, every owner on both sides of Henrietta, from Eutaw to Warner street, and from Howard to Sharp, would be, and if they are those on cross streets, or a little further off on Henrietta or some parallel street might claim damages on the same ground. As said by the Supreme Court of Massachusetts, *supra,* the line must be drawn somewhere, and unless there be some very unusual and extraordinarily peculiar conditions, we think that drawn by the great weight of authority, which we have stated above, is the safe and correct one.

In determining how far a dedication of an unimproved street extends, so as to relieve a municipality from paying damages, in a proceeding for opening etc., such a street, we said in *Hawley* v. *Mayor, &c., of Baltimore,* 33 Md. 280: "The doctrine of implied covenants will be held to create a right of way over all the lands of a vendor which may lie, however remote, in the bed of a street. The lands must be contiguous to the lots sold and there must be some point of

limitation. The true doctrine is, as we understand it, that the purchaser of a lot calling to bind on a street, not yet opened by the public authorities, is entitled to a right of way over it, if it is of the lands of his vendor, to its full extent and dimensions only until it reaches some other street or public way. To this extent will the vendor be held by the implied covenant of his deed, and no further." The dedication in such cases is held to be co-extensive with the right of way acquired as an easement by the purchaser, and although the owner of the land has laid it out in lots and streets and sells lots calling to bind on such streets, the dedication is limited as stated above, and in *Mayor, &c., of Baltimore* v. *Frick,* 82 Md. 85, it was held that the street which limits the extent of the dedication is the next existing public street, whether the same be actually used as same or not. If, for example, Henrietta street was an unimproved street and it had been dedicated by the owner of the land selling lots to appellant and others, the implied covenant for the right of the appellant to use it would only have extended to Eutaw street. If the city had not accepted the dedication, and no lots had been sold east of Eutaw street, when it proposed to open that part of the street, it would have been compelled to pay for it and could not have been aided by the implied covenant for the benefit of the appellant and other purchasers of lots west of Eutaw street, as that only extended to Eutaw street. The theory of the rule of law is that the vendor only covenanted with the vendee that he could have the use of the street on which his lot fronts, to the next existing public street, because there he would have access to other ways. The law fixed the next cross street as the limit, just as it does in this character of cases, because the line must be drawn somewhere, and that was deemed a reasonable and just place to fix it.

We had intended to refer at some length to the cases cited by the appellant, but this opinion is already too long to admit of that, and we must be content with saying that we have

examined them carefully and find that they are for the most part, if not altogether, easily distinguishable from those which sustain the rule we have announced. The case of *Howell* v. *Morrisville Borough, supra,* sufficiently explains that of *In re Melon Street, supra,* to avoid the necessity of further comment, and that of *Dantzer* v. *Railway Co.,* 141 Ind. 604, is much more favorable to the contention of the appellees than it is to that of the appellant. But without mentioning others, an examination of them will show either that damages were allowed under some special statute construed by the Court to include such damages, or that the properties were by the closing left in a *cul de sac* or in some such shape as the Courts held had so affected the access to them as to come within an exception to the general rule.

We do not see the relevancy of the questions in the first and second bills of exception, but whatever the answers might have been they could not have affected our conclusion on the main question. So although it is greatly to be regretted if the property of the appellant has depreciated as indicated by the evidence of the witnesses produced by it—whatever may be the real cause or causes for the depreciation,—we are convinced that under the overwhelming weight of authority it is not entitled to damages in this case, and the action of the Court in granting the motion to dismiss the appeal taken to the Baltimore City Court must be affirmed.

*Order affirmed, the appellant to pay the costs.*