Rockingham
No. 6939

HAROLD A. WOLFE AND GERTRUDE E. WOLFE

v.

TOWN OF WINDHAM

October 31, 1974

*John B. Ford,* by brief and orally, for the plaintiffs.

*Grinnell & Bureau* and *Roland E. Morneau, Jr. (Mr. Morneau* orally) for defendant.

KENISON, C.J. Plaintiffs appealed to the superior court pursuant to RSA 238:4 for an assessment of damages arising from a discontinuance of a road by the town of Windham. Trial by jury resulted in a verdict for the town. Plaintiffs' exceptions to certain jury instructions given by the trial judge were reserved and transferred by *Mullavey,* J. This appeal poses the question of the correctness of the trial court's interpretation of the law as embodied in the jury instructions.

In 1962 plaintiffs owned a 60-acre tract with approximately 1,750 feet frontage on Spear Hill Road, a public road partially within the town of Windham. In February when they learned from newspapers of the proposed closing of Spear Hill Road, the plaintiffs presented to the Windham Planning Board a preliminary subdivision plan comprised of seven lots bordering the road. The motive for submitting the proposal was to make it clear to the town that plaintiffs intended to eventually sell the seven lots. The preliminary plan was endorsed by the board with the understanding that formal approval was not required since Spear Hill Road was still in existence at that time and provided adequate access to the proposed lots. Two weeks later the selectmen of Windham voted to discontinue most of Spear Hill Road. As a result 1,522.5 feet of the road abutting plaintiffs' property was discontinued, leaving them with about 227.5 feet of the access from their property to the portion of the road still open to public. After the discontinuance of Spear Hill Road, plaintiffs retained a private right of way over it and still had access

to three public roads from their land: the open portion of Spear Hill Road, Langdon Road and Range Road. *See* RSA 238:1. It is plaintiffs' primary contention that the closing of the road resulted in a diminution in the value of their property along the closed segment since to implement the proposed subdivision plan after the closing would require the considerable expenditure of reopening Spear Hill Road or making a new road.

The substance of the trial court's charge to which plaintiffs objected is that an abutter cannot recover for the discontinuance of a road if he has an alternative means of access to his property. We agree with the town that this is a correct statement of the law in this State. *St. Regis Co. v. Board,* 92 N.H. 164, 172, 26 A.2d 832, 839 (1942); *Tilton v. Sharpe,* 85 N.H. 138, 139-40, 155 A. 44, 46 (1931); *Cram v. Laconia,* 71 N.H. 41, 52, 51 A. 635, 641 (1901). In *Cram* this court stated that an abutter has a right of access to the highway upon which he is located. *Id.* To the extent that he is specially damaged, as opposed to suffering harm similar to that sustained by the public in general, he can recover for the destruction or impairment of the right of access. As plaintiffs point out, this position is in accord with the accepted view. 2 American Law of Property § 9.54 (A.J. Casner ed. 1952); C. Antieau, 1A Municipal Corporation Law § 9.42 (1974); Annot., 73 A.L.R.2d 652, 656 (1960).

The court in *Cram,* however, did not fully delineate the dimensions of a right to access. In particular, no mention was made of the effect of an alternative means of access where a road directly abutting the property is discontinued. Plaintiffs contend that the presence of another means of access does not affect one's ability to recover damages. But both the *St. Regis* and *Tilton* cases indicate that the question of whether a right of access has been affected entails the consideration of alternative modes of reaching the property. In *St. Regis* plaintiff sought to have a sluiceway made in a recently constructed dam so as to permit it to continue to utilize the river as a means of transporting logs. In rejecting that claim the court recognized the close analogy between a public waterway and public highway, but noted that plaintiff retained another means of access for transporting the pro-

duce of its timberland. *St. Regis Co. v. Board,* 92 N.H. 164, 172, 26 A.2d 832, 839 (1942). Likewise in discussing the right of access in *Tilton,* the court stated that the extent of the right depends on the "accessibility of the property at other points." *Tilton v. Sharpe,* 85 N.H. 138, 139-40, 155 A. 44, 46 (1931). The import of these cases is that the right of access remains unimpaired if an alternative means of access exists. The right consists only of access to the system of public highways not of a particular means of access. Covey, *Frontage Roads: To Compensate or Not to Compensate,* 56 Nw. U.L. Rev. 587, 594 (1974); Note, 14 DePaul L.J. 130, 132 (1964); Sackman, *Access - A Reevaluation,* in 1974 Institute on Planning, Zoning and Eminent Domain (S.W. Legal Fndtn.) 335, 363.

In this case plaintiffs retained access from their property to not only the open portion of Spear Hill Road but also to two other public roads. Since they also retained a private easement over Spear Hill Road, they had ready access to their property from several routes. Plaintiffs' theory, however, is that the access to the seven lots in the preliminary subdivision plan has been impaired. But this assumes that the seven lots had an identity distinct from plaintiffs' property as a whole. Nothing was done to give these lots a separate identity other than the submission of an informal plan to the planning board in anticipation of the closing of Spear Hill Road. This in itself did not yield a right of access specifically for the seven lots. *See Piper v. Meredith,* 110 N.H. 291, 299, 266 A.2d 103, 109 (1970).

Accordingly, the trial court's instructions are sustained and the order is

*Plaintiffs' exceptions overruled.*

GRIMES, J., dissented; the others concurred.

GRIMES, J., dissenting: In the court's charge, the jury was told that if the plaintiffs had an "alternative access to his property", they could not recover. There was no mention made as to the reasonableness of the alternative means of access.

I think the court is wrong in two respects. It seems clear

to me that when land abuts upon that part of a highway which is discontinued, the owner is entitled to damages for loss of access to the public highway. But where the land does not abut upon that part of the highway which is discontinued, the owner may recover only if he has suffered "a peculiar and special damage not common to the public". *Candia v. Chandler*, 58 N.H. 127 (1877). This distinction is recognized in *Cram v. Laconia*, 71 N.H. 41, 51 A. 635 (1901), relied on by the court. In the case at bar, the plaintiffs' property abuts that part of the highway which was discontinued and they are entitled, therefore, to damages. In *Cram*, the plaintiff's property did not abut any part of the highway which was discontinued and he could not recover because of the inability to show special damages. *St. Regis Co. v. Board*, 92 N.H. 164, 26 A.2d 832 (1942), also relied on by the court, was not a highway case but involved the building of a dam on a river which prevented plaintiff from floating logs downstream. Plaintiff's access to the river from its property was in no way reduced but rather its damage was its inability to use the river for navigation, a loss which was common to the rest of the public. The case recognizes also the distinction between rivers and highways.

In addition *Tilton v. Sharp*, 85 N.H. 138, 155 A. 44 (1931), also cited by the court, was not a discontinuance-of-a-highway case. Rather, it was a case involving loss of access to a filling station from one of two adjacent streets. Nevertheless, that case states that the reasonableness of alternative means of access must be considered. In the case before us, the jury was not told to consider the reasonableness of the alternative means of access but were told that any other means of access would prevent the plaintiffs from recovering damages. *See* C. Antieau, 1A Municipal Corporation Law § 9.42, at 9-91 (1974). I think, therefore, that a new trial should be ordered.