**Leopold J. WARCHALOWSKI**

v.

**Robert A. BROWN et al.**

**Robert A. BROWN**

v.

**Burton MacDONALD et al.**

Supreme Judicial Court of Maine.

Argued June 19, 1980.

Decided July 14, 1980.

Thomas M. Mangan, Lewiston (orally), for plaintiff.

Linnell, Choate & Webber by G. Curtis Webber, Auburn (orally), for defendants.

Before McKUSICK, C. J., and WERNICK, GLASSMAN and ROBERTS, JJ.

McKUSICK, Chief Justice.

By agreement of the parties this consolidated action was referred to a referee who rejected appellant Warchalowski's claim of a right of way by either prescription or necessity over appellee Brown's land, but upheld the action of the Oxford County Commissioners (the Commissioners) that had granted Warchalowski's petition for the laying out of a private way. After both parties objected to the referee's report, the

Superior Court (Androscoggin County)[1] affirmed the denial of any easement by necessity or prescription, but reversed the decisions of the referee and the Commissioners regarding the laying out of the private way. Warchalowski appeals to this court from the Superior Court's judgment declaring Brown's property to be unburdened by any claimed easement or right of way.

We deny Warchalowski's appeal to the extent it relies upon a claimed easement by necessity, but sustain his appeal as to the Commissioners' action in laying out a private way.

Almost nine years ago, by petition dated October 15, 1971, appellant Warchalowski and three other persons[2] petitioned the selectmen of the town of Buckfield[3] (the Selectmen) to lay out a private way across appellee Brown's land that would follow the course of a town way, the Jim Young Road, that had been discontinued on August 28, 1951, just 17 days after the town sold a lot fronting on the road to one Tanguay, a predecessor-in-interest of Warchalowski. There was no indication as to whether Tanguay sought or was awarded damages by reason of the road's discontinuance. As a result of a tax lien filed against Tanguay the town of Buckfield, on March 9, 1955, reacquired ownership of the lot and, on October 17, 1956, sold it to one Carrier by a quit-claim deed that described the lot as being bounded "on the south by the highway [Jim Young Road]." Warchalowski purchased an interest in the land-locked lot in 1970 and attempted to use the discontinued road across Brown's land in order to reach a county road. After resistance from Brown, the petition for a private way was filed.

The Buckfield Selectmen denied the petition on November 4, 1971, prompting Warchalowski and his co-owners two weeks later to petition the Oxford County Commissioners pursuant to former 23 M.R.S.A. § 3006 (1964) (repealed effective July 29, 1976)[4] to lay out the private way. After an

---

1. Upon motion of the parties, venue was changed from Oxford to Androscoggin County for reasons of convenience. *See* 14 M.R.S.A. § 508 (1980).

2. Joining Leopold Warchalowski in the petition were Joseph Klimek, Shirley Labrie, and Richard Warchalowski. Only Leopold Warchalowski has prosecuted an appeal from the Superior Court's decision to the Law Court. The others, after filing notices of appeal, have not filed briefs or appeared at oral argument. Their appeals must be dismissed for want of prosecution.

3. The petition was brought pursuant to former 23 M.R.S.A. § 3001 (1964) (repealed effective July 29, 1976), which provided:

   § 3001. Powers of officers; notice

   The municipal officers of a town may on petition therefor, personally or by agency, lay out, alter or widen town ways and private ways for any inhabitant or for owners of cultivated land therein, if such inhabitant occupies or such owner has cultivated land in the town which such private way will connect with a town way or highway. They shall give written notice of their intentions, to be posted for 7 days in 2 public places in the town and in the vicinity of the way, describing it in such notice, and they shall determine whether it shall be a town way or a private way, and if a private way, whether it shall be subject to gates and bars.

Because the petition was filed prior to the effective date of P.L.1975, ch. 711, which repealed 23 M.R.S.A. §§ 3001–3012, those sections continue to govern the disposition of this case. *See Comber v. Inhabitants of Plantation of Dennistown*, Me., 398 A.2d 376, 379 n. 3 (1979).

4. The former section 3006 provided as follows:

   § 3006. Refusal or neglect of municipal officers

   When the municipal officers unreasonably neglect or refuse to lay out or alter a town way, or a private way on petition of an inhabitant of or an owner of land therein for a way leading from such land under improvement to a town or highway, the petitioner may, within one year thereafter, present a petition stating the facts to the commissioners of the county at a regular session, who shall give notice thereof to all interested and act thereon as is provided respecting highways. When the decision of the municipal officers is in favor of such laying out or alteration, any owner or tenant of the land over or across which such way has been located shall have the same right of petition. When the decision of the commissioners is returned and placed on file, such owner or tenant or other party interested has the same right to appeal to the Superior Court as is provided in sections 2063 to 2066, and to have his damages estimated as provided in section 2058.

on-site inspection and a full hearing, the Commissioners granted Warchalowski's petition on October 9, 1972, laid out a private way subject to gates and bars over the discontinued Jim Young Road, and awarded damages to Brown in the amount of $1.00.

Brown then appealed the Commissioners' decision to the Superior Court pursuant to former section 3006. While the Superior Court appeal was pending, Warchalowski filed in that appeal action a counterclaim and cross-claim, alleging an easement by prescription or, in the alternative, by necessity. On December 17, 1976, Warchalowski brought a separate Superior Court action against Brown, asserting a right of way by prescription. After consolidating the actions, the Superior Court appointed a referee who, after a hearing, rejected Warchalowski's claims of a right of way by prescription or necessity but upheld the action of the Commissioners in laying out a private way. The Superior Court then overruled Warchalowski's objections to the referee's report and sustained Brown's objection to the referee's conclusion that the Commissioners had acted properly in laying out the private way.

■■■ Before the Law Court, as below, Warchalowski argues that an easement by necessity [5] was created in 1951, when the town of Buckfield sold the lot in question to his predecessor Tanguay. However, at the time of the Tanguay conveyance on August 11, 1951, the Jim Young Road was a public way over which access to the county road was readily available. Because Tanguay's lot was thus not then inaccessible, the law cannot infer an easement by necessity. Nor was such an easement created by the road's discontinuance 17 days later; that discontinuance could give a right to damages against the town, but under former section 3004 (repealed effective July 29, 1976) gave him no right to an easement by necessity over land of his neighbor Brown or over a road to which his grantor, the town, was giving up all interest.

■■ 'Warchalowski's argument that the 1956 conveyance by the town of Buckfield to Carrier created an easement by necessity also fails. Even though the lot was conveyed as bounded by "the highway" (meaning the Jim Young Road), such a reference creates a private easement *only if* the grantor, at the time of the conveyance, owns in fee the land under the road. *Young v. Braman*, 105 Me. 494, 75 A. 120 (1909). In this case, there was no evidence that the town of Buckfield owned the land under the discontinued road at the time of the conveyance to Carrier. Consequently, the Superior Court correctly accepted the referee's conclusions that no easement by necessity was created either in 1951 or 1956.

The primary question presented by Warchalowski's appeal is whether or not it was necessary for the Commissioners to make an express finding on their return that the Selectmen had acted unreasonably in refusing to lay out the requested private way. Former section 3006 provided that *if* the municipal officers "unreasonably neglect or refuse to lay out" a requested private way, a petition can be brought before the county commissioners who may *then* act to lay out the way. In the case at bar, Warchalowski's petition alleged unreasonable neglect and refusal, but the Commissioners' return included no such express determination. The referee ruled that a specific finding of unreasonableness was not mandated by former section 3006 and could be inferred from the inclusion of the petition itself in the Commissioners' return and the granting of the requested relief. The Superior Court, although acknowledging that the referee's ruling "has a certain logical appeal," concluded that a jurisdictional prerequisite to any action on a petition by the Commissioners is a determination on the record that the municipal officers were unreasonable in refusing or neglecting to lay out the private way requested. Because the Commissioners made no such finding, the Superior Court held that the Commissioners were without jurisdiction and reversed their decision laying out the requested way.

---

**5.** Warchalowski's argument that an easement by prescription existed, rejected both by the referee and the Superior Court, has not been pursued on his appeal to this court.

The Superior Court relied upon the line of authority started by Chief Justice Mellen in *State v. Pownal*, 10 Me. 24 (1833), and followed in *Goodwin v. County Commissioners*, 60 Me. 328 (1872), and *Pownal v. County Commissioners*, 63 Me. 102 (1873), that the commissioners must make an on-the-record determination that the town officials have unreasonably refused to lay out the private way. However, Chief Justice Appleton in *Inhabitants of Dresden v. County Commissioners*, 62 Me. 365 (1874), decided after *Pownal v. County Commissioners* (reported in 63 Me. 102) and *Goodwin*, and Justice, later Chief Justice, Pattangall in *Phippsburg v. County Commissioners*, 127 Me. 42, 141 A. 95 (1928), both concluded that the determination of unreasonableness need not be found within the four corners of the county commissioners' return, provided that it is shown to have actually been made once the issue was raised. Chief Justice Appleton in particular teaches us that under the procedure by *certiorari* for reviewing county commissioner decisions a showing that the county commissioners in fact made the preliminary determination of unreasonableness can be shown by evidence extrinsic to or *aliunde* the record on the question whether the writ of *certiorari* will be issued, but that on *certiorari*, that is, after the writ has been issued and the record is being reviewed, as was the case in Chief Justice Mellen's opinion in *Pownal*, the record as certified must alone be searched to find that determination. Thus, in *Dresden*, the testimony of the commissioners at the time of the action on the petition was admissible to show compliance with the statute.

■ As amended effective December 31, 1967, M.R.Civ.P. 81(c) abolished the writ of *certiorari* and stated:

Review of any action or failure or refusal to act by a governmental agency, including any department, board, commission, or officer, shall be in accordance with procedure prescribed by Rule 80B.

The simplified procedures of Rule 80B now govern the review of "any action or refusal to act by a governmental agency," and are intended to serve as the sole means of judicial review in place of all the former extraordinary writs, including *certiorari.* See M.R.Civ.P. 80B, Advisory Committee's Note (Dec. 31, 1967); 2 Field, McKusick & Wroth, *Maine Civil Practice* § 80B.1 (2d ed. 1970). Thus, the review of a record on *certiorari* and the initial determination of whether or not the writ of *certiorari* should issue are now combined in the single, comprehensive procedure of Rule 80B. The thrust of *Dresden* and *Phippsburg*—permitting extrinsic evidence as to the action of the governmental agency being reviewed—carries over today with our Rule 80B.

■ We agree with the referee to the extent he held that an express recitation of the municipal officers' unreasonableness is not required in the Commissioners' return.[6] We hold, however, that it is essential to the authority of the County Commissioners to lay out a way that they in fact determine preliminarily that the municipal officers have indeed been unreasonable in neglecting or refusing to act. The reason declared by Chief Justice Mellen in 1833 for requiring this jurisdictional determination remains equally true today. The Selectmen's neglect or refusal to lay out the way

may have been founded on good and substantial reasons, existing and operating at the time of such [neglect] or refusal . . . and yet at the time the [county commissioners] undertake to lay out and establish the way, these reasons may have *ceased to exist*; and the road prayed for may be highly beneficial to the town; yet such facts would, of themselves, give no authority to the [County Commissioners] to lay out the road.

(Emphasis in original) *State v. Pownal, supra* at 26. Consequently, we must vacate

---

**6.** The referee was incorrect to the extent that he relied upon the decision of *Higgins v. Hamor*, 88 Me. 25, 33 A. 655 (1895). *Higgins*, written by Justice, later Chief Justice, Emery, is irrelevant here because it involved a *collateral* attack upon a county commissioners' return that was silent as to unreasonableness. Justice Emery wrote that had the attack been made by direct appeal, the return might have failed.

the judgment of the Superior Court that set aside the Commissioners' laying out of the private way over Brown's land and remand to the Superior Court to take evidence on the very specific question of whether the Commissioners, on October 9, 1972, actually made a preliminary determination that the Selectmen acted unreasonably on November 4, 1971, in refusing to lay out the requested private way. The court may receive testimony and other evidence from the 1972 County Commissioners themselves—or, if they are not available, from other sources—as to what they in fact had decided.[7]

Brown's contention that former section 3001 authorizes the unconstitutional taking of private property for a nonpublic use was expressly rejected by the Law Court in *Browne v. Connor*, 138 Me. 63, 21 A.2d 709 (1941). We reaffirm the well-considered opinion written by Justice Thaxter in *Browne* and conclude that the laying out of a private way here would be constitutional.

In their return the Commissioners, after laying out the private way, awarded to Brown only one dollar "as a full and just compensation and equivalent for all damages . . . sustained." Pursuant to 23 M.R.S.A. § 2055 (1980) and the decision of *Boston & Maine R. Co. v. Commissioners*, 78 Me. 169, 3 A. 273 (1886), construing a predecessor provision, an individual aggrieved by the commissioners' award of damages who files an appeal pursuant to section 2063 to the Superior Court as to the laying out of the way may separately file a notice of appeal on damages within 60 days "after the final decision of the appellate court in favor of such way."[8] Because the validity of the Commissioners' return is not yet final, the question of damages is still a live one.

It would appear that the damages as fixed by the Commissioners are grossly inadequate. Should the Superior Court determine on remand that the Commissioners in 1972 did make the required preliminary determination of unreasonable refusal on the part of the Selectmen and enter judgment affirming the Commissioners' layout of the private way, Brown may then file an appeal pursuant to 23 M.R.S.A. § 2058 within 30 days after the Commissioners' return has become final. After such an appeal is filed, the Superior Court shall proceed to determine appropriate damages suffered by Brown from the laying out of the private way.

Finally, we are constrained to comment upon the inadequacy of the appendix filed by the appellant. He failed to comply with the minimum requirement of M.R.Civ.P. 74C(a) that the appendix include among other things "relevant docket entries in the proceedings below," and included instead

7. On remand the Superior Court should consider the fact that the Commissioners evaluated the reasonableness of laying out the private way less than a year after the action of the Selectmen, thus minimizing the possibility articulated by Chief Justice Mellen that circumstances would have changed to such an extent as to render what may have been reasonable in 1971 unreasonable in 1972. Additionally, the Superior Court should consider the fact that Warchalowski's petition alleging the unreasonableness of the Selectmen's action was included in full by the Commissioners in their return.

8. Section 2055 states in full:
§ 2055. Return filed; appeal
The return of the commissioners, made at their next regular statute session after the hearing provided for in section 2054, shall be placed on file and remain in the custody of their clerk for inspection without record. The case shall be continued to their next regular term of record, and at any time on or before the 3rd day thereof, if no appeal from the location be taken, all persons aggrieved by their estimate of damages shall file their notice of appeal. If no such notice is then presented or pending, the proceedings shall be closed, recorded and become effectual; all claims for damages not allowed by them be forever barred; and all damages awarded under sections 2051 to 2061, 2101, 2151 and 2152 paid out of the county treasury except as provided in section 2101. If an appeal from the location be taken in accordance with section 2063, then notice of appeal on damages may be filed with the clerk of the county commissioners within 60 days after the final decision of the appellate court in favor of such way as has been certified to him, to the Superior Court in the county where the land is situated, which court shall determine the same in the same manner as is provided in section 2058, when no appeal on location is taken.

only the clerk's table of contents of certain documents on file with her. Absence from the appendix of the essentials required by the rule seriously inconveniences the members of the Law Court in considering an appeal with a record as complex as that in the case at bar.

The entry must be:

Leopold Warchalowski's appeal denied in part; judgment affirmed in denying claim of easement by necessity or prescription.

Leopold Warchalowski's appeal sustained in part; judgment as to laying out of private way vacated and case remanded for further proceeding consistent with the opinion herein.

Appeals by other parties dismissed.

The parties are to bear their own costs on appeal.

All concurring.