The **TOWN OF WINDHAM**

v.

**PORTLAND WATER DISTRICT, et al.**

Supreme Judicial Court of Maine.

Argued Nov. 18, 1987.
Decided Feb. 3, 1988.

John C. Bannon (orally), E. Stephen Murray, Michael E. Parker, Murray, Plumb & Murray, Portland, for plaintiff.

Andrew M. Horton (orally), Jamns G. Goggin, Verrill & Dana, Portland, for defendants.

John W. Ballou, Mitchell & Stearns, Bangor, amicus curiae—Maine Water Utilities Assn.

Before NICHOLS, ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

SCOLNIK, Justice.

The plaintiff, Town of Windham (hereinafter "the Town") appeals from a judgment entered upon an order of the Superior Court, Cumberland County, dismissing the Town's complaint against the defendants Portland Water District (hereinafter "PWD") and Cumberland County Board of Commissioners (hereinafter "the Commissioners"). We vacate the judgment.

In December, 1985, PWD applied to the Town for a utility location permit pursuant to 35 M.R.S.A. § 2483 (1978 and Supp. 1986). PWD was requesting permission to install a 12 inch water main along Lowell Road and Land of Nod Road in Windham. The water main was to provide water for a planned mobile home development in Windham to be constructed by the Arcadia Corporation.[1] PWD gave notice regarding its application pursuant to 35 M.R.S.A. § 2483(3).[2]

Several residents apparently objected to the proposed water main. The record does not indicate whether the residents registered their objections in writing as required by 35 M.R.S.A. § 2483(4)(A).[3]

Nonetheless, the Windham Town Council (hereinafter "the Council") held a hearing on the permit pursuant to 35 M.R.S.A. § 2483(5).[4] The Council voted to deny PWD's application based on concerns relating to traffic safety and blasting operations that were to be conducted during the installation of the water main.

PWD then appealed the Council's decision to the Commissioners, as authorized by 35 M.R.S.A. § 2483(14)(C).[5] The Commissioners subsequently conducted a *de novo* hearing on the appeal and issued a written opinion in which they conditionally approved PWD's application. The two conditions placed on the application were that: (1) PWD post at least one "flagger" on the construction site at all times, and (2) PWD hire a licensed geologist to assess possible blasting damage to nearby property before PWD's utility permit would be approved.[6]

The Town, which had been represented by counsel at the hearing before the Commissioners, then filed in the Superior Court its complaint against PWD and the Commissioners, appealing the Commissioners' decision. The Town claimed that its appeal was authorized by M.R.Civ.P. 80B. PWD filed a motion to dismiss on the ground that the Town lacked standing to appeal because it had failed to allege a particularized

---

1. The planning board approved the proposed Arcadia development over the objection of several residents. The aggrieved residents appealed the Board's action to the Superior Court, which affirmed the approval. The residents then took an appeal of the Superior Court's finding to this court. We upheld the Superior Court decision in *Larrivee v. Timmons*, 525 A.2d 1037 (Me.1987).

2. Section 2483(3) reads, in pertinent part:

   The applicant may give public notice of the application by publishing its description of the proposed facility once in a newspaper circulated in the municipality or municipalities encompassing the limits of the proposed location.

3. Section 2483(4)(A) reads, in its entirety:

   Any person, firm or corporation owning property within the subject municipality and which abuts the applicable public way may file a written objection with the appropriate licensing authority within 14 days after publication by the applicant. The written objection shall state the cause for the objection.

   The written objection shall be served by delivery in hand or by registered or certified mail.

4. Section 2483(5) reads, in pertinent part:

   The licensing authority on receipt of a written objection shall fix a time and place for hearing, and 7 days' notice of hearing shall be given by registered or certified mail to the applicant and any person, firm or corporation filing lawful objections.

5. Section 2483(14)(C) reads, in its entirety:

   In cases of cities or towns, the decision of municipal officers or their designees shall be filed with the clerk of the city or town within one week from the date thereof. Within 2 weeks from the filing, any person aggrieved may appeal from their decision by filing notice of appeal with a copy of the original petition and adjudication with the clerk of the city or town and with the clerk of the board of county commissioners.

6. One of the three Commissioners dissented from the majority's opinion, basing his disagreement on traffic safety and blasting concerns.

injury. After a hearing on the Town's appeal and the motion to dismiss,[7] the hearing justice determined in his written decision that the Superior Court lacked jurisdiction over the appeal. The justice based his conclusion on the language in 35 M.R.S.A. § 2483(14), which he summarized as follows:

> Under the statute, the initial permit hearing will be held either before the Department of Transportation, the municipal officers, or the County Commissioners, depending on whether the public way in question is the responsibility of the State, the town or the county. If the initial hearing is before the DOT or the commissioners, the aggrieved party can appeal only to the County Commissioners. Section 2483(14) grants no additional M.R.Civ.P. 80B appeal rights from the commissioners' decision.

He therefore dismissed the Town's complaint. The Town now appeals this dismissal.

## I.

■ Initially, PWD asserts that the Town has not alleged the particularized harm required for standing. PWD overlooks the point that the requirement of a particular injury distinct from that suffered by the general public is a prerequisite for standing in cases involving individuals, not municipalities. *See e.g. Hammond Lumber v. Finance Authority of Maine,* 521 A.2d 283, 286 (Me.1987); *Ricci v. Superintendent, Bureau of Banking,* 485 A.2d 645, 647 (Me.1984); *Buck v. Town of Yarmouth,* 402 A.2d 860, 861 (Me.1979). PWD's other standing arguments are without merit and require no further discussion.

## II.

The Town contends that the hearing justice erred when he concluded that the Superior Court had no jurisdiction to hear the Town's appeal. The Town argues that because it had both a statutory and common law basis for its appeal, it was authorized to obtain a review in Superior Court pursuant to M.R.Civ.P. 80B. Although we conclude that the Town did not have a statutory basis for appeal, we agree with its contention that a review under Rule 80B was appropriate because an appeal here would have been "otherwise available" under a common law extraordinary writ. *See Lyons v. Board of Directors,* 503 A.2d 233, 236 (Me.1986).

The Town argues that section 2483 expressly authorized its appeal to the Superior Court. It points out that section 2483(14)(B) authorizes an appeal to the Superior Court from a "decision of the Department of Transportation or the County Commissioners." However, if the statute is not read in a fragmentary way but as a single piece of legislation, *see Bolduc v. Androscoggin County Commissioners,* 485 A.2d 655, 657–58 (Me.1984), it is readily apparent that an appeal is not expressly provided.

We acknowledge that the wording of the statute is not unambiguous.[8] Nonetheless, the statute appears to contemplate two different hearing procedures for permit applications. One type of initial hearing is to be held before either the Department of Transportation (hereinafter "DOT") or the Commissioners. These hearings are conducted when public ways affected by the application for a permit fall under State (DOT) or county (Commissioners) supervision. *See* 35 M.R.S.A. §§ 2483(1)(A) and 2483(5). The other type of hearing is of the sort conducted before the Council in this case, where the public was involved is under the supervision of a local municipality. *Id.*

■ The portion of the statute that deals with appeals, section 2483(14), when read together with the previously noted sections

---

7. The Commissioners have not entered an appearance personally or through counsel at any stage of the Town's appeal.

8. The legislative history of section 2483 sheds no light on the legislature's intent with regard to the appeal process. The current appeal provisions have remained virtually unchanged since the turn of the century, when the predecessor to the current statute was in R.S. ch. 55, § 17 (1903).

in the statute, indicates that the statute authorizes an appeal to the Superior Court from an initial hearing before the DOT or the Commissioners, but that the statute authorizes an appeal *only* to the Commissioners from a decision of a municipality:

> B. Any person, firm or corporation aggrieved by a decision of the Department of Transportation or the county commissioners may appeal to the Superior Court in the manner provided in Title 23, sections 2063 to 2066, relating to highways.
> C. In case [sic] of cities and towns, the decisions of the municipal officers or their designees shall be filed with the clerk of the city or town within one week from the date thereof. Within 2 weeks from the filing, any person aggrieved may appeal from their decision by filing notice of appeal with a copy of the original petition and adjudication with the clerk of the city or town and with the clerk of the board of county commissioners.

If the legislature had intended that there be a further right of appeal from the decision of the Commissioners in section 2483(14)(C), it probably would have included a provision relating to such an appeal *within* or *following* the section. The sequence and semantic organization of the statute's appeal provisions suggest that, in this case, the Town had no statutory basis for pursuing its appeal in the Superior Court. Although no statutory basis exists to justify review under Rule 80B, we do not discern any legislative intent that the Commissioners' decision be final.

The Town next argues that it had a common law basis for its appeal, and it was therefore authorized to appeal to the Superior Court by virtue of M.R.Civ.P. 80B. Rule 80B permits an appeal from governmental action when such an appeal is authorized "by statute or is otherwise available by law." Appeals "otherwise available by law" include actions formerly brought under common law extraordinary writs, such as mandamus, certiorari and prohibition. *See Lyons*, 503 A.2d at 236; *Warchalowski v. Brown*, 417 A.2d 425, 429 (Me.1980); *Fletcher v. Feeney*, 400 A.2d 1084, 1088 (Me.1979); 2 Field, McKusick &

Wroth, *Maine Civil Practice* § 80B.1 (2d ed. 1970). In order for an appeal to be properly brought under the writ of certiorari, an appellant had to demonstrate that he was appealing from a decision of a governmental agency performing a judicial or quasi-judicial function. A judicial proceeding has been defined as the adjudication of the rights of parties who appeal to or are brought before a tribunal by notice or process. *Lyons*, 503 A.2d at 236.

In this case, the Commissioners constituted a governmental agency performing a judicial function. The hearing they conducted was held after notice and resulted in a determination of the rights of the parties before them. Therefore, since the Town's appeal was one formerly authorized by the writ of certiorari, it was properly before the Superior Court as one "otherwise available by law" within the authorization of Rule 80B.

### III.

We must next determine if the Commissioners were authorized to conduct a *de novo* hearing. The Town contends that the hearing justice erred in concluding that the Commissioners were so authorized. It argues that because section 2483(14) authorizes an "appeal" and not "a review", this shows a clear intent of the legislature to preclude the Commissioners from conducting a *de novo* hearing. This argument is also unavailing.

The language of section 2483(14)(E) itself suggests that a *de novo* evidentiary hearing is appropriate:

> The commissioners shall immediately entertain the appeal and give 2 weeks' notice of the time and place of hearing, which time shall be within 30 days from the time the appeal is filed. The hearing may be adjourned from time to time, not exceeding 30 days in all, and the commissioners shall file their decision within 30 days from the time the hearing in [sic] closed and transmit a copy of the same to the applicant, any other parties to the appeal and to the clerk of the city or town, who shall immediately record it.

If the legislature had intended this hearing to be confined to a review of evidence on the record, the legislature would not have provided for a hearing of up to 30 days in duration. A record review would require at most several hours, not several days. Accordingly, we conclude that the statute authorized a *de novo* review by the Commissioners.

■ Moreover, with the countless applications for utility location permits, the vast majority of which are unopposed, the legislature must clearly have recognized that it was not practical to require utility applicants to make more than a "bare bones" presentation before the town fathers. The legislature must have realized that it is far more sensible to provide for a complete hearing at the Commissioners' level once opposition arises to the application before the Town. Therefore, we discern no valid reason for the Commissioners to defer to the findings in the Town Council's denial of the permit that was made on a less than complete presentation by an applicant who anticipated no opposition.

## IV.

Finally, the Town contends that the Commissioners' decision was not supported by substantial evidence on the record and should be vacated. We review the Commissioners' decision directly in order to determine if it was supported by substantial evidence on the record. *See Hammond,* 521 A.2d at 287; *Driggin v. Town of Wells,* 509 A.2d 1171, 1174 (Me.1986).

The statute does not specify who had the burden of proof at the hearing before the Commissioners, nor does the statute expressly permit the Commissioners to deny an application outright. The statute does allow the Commissioners to impose conditions on the permit, but is silent as to other powers the Commissioners may or may not have had with respect to the issuance or denial of a permit.[9]

9. Section 2483(6) reads, in pertinent part:
   The licensing authority [here, the Commissioners] may specify in the permit other requirements deemed necessary in the best in-

■ At the hearing, the Commissioners heard a great deal of testimony from Jay Hewett, a PWD engineer, and Steve Gordon, PWD's director of operations. Hewett described in great detail the procedures employed by PWD in preparation for and during the installation of a water main such as the one proposed. Hewett also testified that he had never known blasting to affect nearby wells. Gordon testified that the roads close to the site of the proposed water main were not unlike roads PWD crews had worked on previously. Gordon further testified that PWD had an excellent blasting safety record. He guaranteed that one line of traffic would always be kept open during the installation of the water main. Gordon also described precautions PWD would take to ensure that any damage caused by blasting would be documented by PWD. Anthony Norton, an engineer from the DOT, also testified. Norton stated that he had personally observed the site of the proposed water main, and that in his opinion, if the DOT had jurisdiction over the matter, the DOT would have granted the permit without hesitation. The testimony of these witnesses provided substantial evidence on the record sufficient to support the Commissioners' decision.

The entry is:

Judgment vacated. Remanded to the Superior Court with instructions to affirm the decision of the Cumberland County Board of Commissioners.

All concurring.

terests of the public safety and use of the right-of-way so as not to incommode use for public travel.