NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Cheshire
No. 2019-0688

LAUREN SHEARER

v.

RONALD RAYMOND & a.

Submitted: November 10, 2020
Opinion Issued: January 13, 2021

Lauren Shearer, self-represented party, by brief.

Getman, Schulthess, Steere & Poulin, P.A., of Manchester (Clara E. Lyons on the brief), for the defendants.

BASSETT, J. The plaintiff, Lauren Shearer, appeals, and the defendants, Ronald Raymond and Sandra Auvil, cross-appeal, an order in which the Superior Court (Ruoff, J.) found that the plaintiff has an easement across the defendants' property to access his landlocked property. The court ruled that "by operation of common law" the plaintiff has an easement to access his parcel over a public highway that was discontinued by town vote in 1898. The defendants' cross-appeal presents a question of first impression for this court: whether the owner of landlocked property has an easement for ingress and egress over a public highway that was discontinued by town vote prior to the enactment of the statutory right of access. See RSA 231:43, III (2009). The plaintiff, in turn, appeals certain aspects of the trial court's order relating to the width and permitted uses of the easement. We hold that, under New

Hampshire common law, an easement exists over a discontinued highway if the landowner demonstrates that the easement is reasonably necessary for ingress and egress to the property. Accordingly, we vacate the trial court's decision and remand for the trial court to make that determination in the first instance. In the interests of judicial economy and because the issues may arise on remand, we also address the issues raised by the plaintiff in his appeal.

The trial court found, or the record supports, the following facts. The plaintiff purchased the subject parcel in 2004. The parcel lacks frontage on a public highway; rather, it abuts a discontinued public highway, known as Bowker Road, which was laid out by the Town of Richmond in 1766 and was discontinued by town vote in 1898. According to handwritten records of the 1766 vote to lay out the road, the selectboard called for the highway to be "three rods wide." The record suggests that the sole resident on Bowker Road was a farmer who lived in a house on the parcel now owned by the plaintiff. Eventually, the home fell into disrepair. Historically, Bowker Road was used to access only residential dwellings and farmland. At a town meeting in 1972, the Town voted to make a number of highways, including Bowker Road, subject to gates and bars, "if they have not already been discontinued."

Bowker Road begins at Whipple Hill Road, a public highway, where the defendants own property. A locked gate, located at the intersection of Bowker Road and Whipple Hill Road, has barred entrance to Bowker Road for at least 50 years. Bowker Road crosses over the defendants' property before reaching the plaintiff's property. The record shows that other lots also abut Bowker Road as it continues beyond the defendants' property. Currently, Bowker Road is unpaved and unimproved, with stone walls along portions of it, and it "is easily navigable by car" from Whipple Hill Road to the plaintiff's parcel. It continues beyond the plaintiff's parcel but cannot be navigated by car or truck due to grade and erosion. Presently, Bowker Road is used to "access other small structures — like hunting cabins" along the road. There is no evidence that it has been used for commercial purposes other than sporadic logging. Nor is there evidence that it has been used as a means for utility access.

When the plaintiff purchased the property, he was aware of an action brought by his predecessor-in-title in which the trial court ruled that, pursuant to the 1898 town vote, Bowker Road was discontinued. He was also aware that there was no express easement granting him the right to travel over the portion of Bowker Road that crossed the defendants' property. When the plaintiff purchased the property, the defendants granted him permission to use Bowker Road to access his property, and they gave him a key to the gate.

In 2008, the plaintiff submitted a petition to the Town to have Bowker Road reinstated as a public highway. The selectboard denied the petition, citing: (1) a lack of public necessity for a public highway; (2) the infringement on the defendants' property rights that would result from the reinstatement of

Bowker Road; and (3) the additional financial burden that it would impose on the Town.

In 2018, a dispute arose between the parties when the plaintiff threatened to remove the gate from the entrance of Bowker Road. Shortly thereafter, the plaintiff filed this action in the trial court against the defendants, seeking, in part, the right to use Bowker Road to access his property. He claimed that, as a result of the 1766 layout, he had an easement over Bowker Road that was at least three rods wide, and requested that the court enjoin the defendants from interfering with his access to the easement. The Town was dismissed from the lawsuit and is not a party to this appeal.

The trial court held a bench trial and conducted an extensive view, which included a two-to-three-mile hike along Bowker Road. In its order on the merits, the trial court, after observing that the plaintiff was not entitled to a statutory right of access over Bowker Road, see RSA 231:43, III, ruled that, because Bowker Road was a discontinued public highway, he had an easement "at common law." The court observed that "[t]here is no controlling law" in New Hampshire as to whether a landowner whose land abuts a public highway retains a private easement to access that highway after it is discontinued. Relying upon case law from other jurisdictions, the trial court ruled that, "when a public [highway] is discontinued or abandoned, the abutting landowner retains the private right of access." See Gillmor v. Wright, 850 P.2d 431, 437-38 (Utah 1993). The trial court also stated that the Town, by its 1972 vote, had made Bowker Road subject to gates and bars. The trial court did not address the plaintiff's claim that he had a prescriptive easement over Bowker Road.

The trial court then ruled as to the nature and scope of the easement. Based upon the evidence at trial and the court's observations at the view, it found that the easement is 16 feet in width, relying largely upon the location of the stone walls and evidence of frequent travel. The trial court also concluded that, "[s]ince the lands off of Bowker Road have only ever been used for residential or agricultural purposes, the easement is limited in scope to those uses (assuming local land use regulations allow for such use)."

The trial court further ruled that, "because the erection of the gate is inconsistent with the plaintiff's right of way, the plaintiff may have it removed." Noting that the defendants have observed "unsafe OHRV traffic" on Bowker Road, the trial court warned the plaintiff that, should he remove the gate, he "may be held liable for anyone injured along the right of way because the defendant[s] erected the gate to safeguard their property and the plaintiff is now requiring its improvident and unwise removal." The plaintiff moved for reconsideration, challenging, in part, the trial court's determination as to the width and reasonable use of the easement. The trial court denied the motion. This appeal and cross-appeal followed.

3

In reviewing a trial court's decision rendered following a trial on the merits, we uphold the trial court's factual findings and rulings unless they lack evidentiary support or are legally erroneous.  Jesurum v. WBTSCC Ltd. P'ship, 169 N.H. 469, 476 (2016).  We do not decide whether we would have ruled differently than the trial court, but rather, whether a reasonable person could have reached the same decision as the trial court based upon the same evidence.  Id.  Thus, we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence.  Id.  However, we review questions of law de novo.  See id.

We turn first to the defendants' challenge to the trial court's ruling that, because Bowker Road was discontinued in 1898, by operation of common law the plaintiff has an easement across their property over Bowker Road to access his parcel.  They argue that, in the absence of a right of access provided by a statute in effect at the time of the discontinuance, an easement does not exist solely because the public highway was discontinued.  They contend that the trial court's ruling is "inconsistent with established New Hampshire common law."

We begin by reviewing the relevant statutes and case law.  We have recognized that "[h]ighways are established, altered, and discontinued for the public good."  Cram v. Laconia, 71 N.H. 41, 42 (1901).  The legislature has long authorized municipalities to take land from a private landowner for the purpose of laying out a public highway, see Underwood v. Bailey, 56 N.H. 187, 189 (1855), provided that compensation is given to the landowner for the taking, see Hampton v. Coffin, 4 N.H. 517, 518 (1829); State v. Reed, 38 N.H. 59, 60 (1859).  We have observed that, upon the laying out of a public highway through an individual's land, "the public acquires a right of passage" over the highway, which continues until the town, pursuant to its statutory authority, discontinues it.  Coffin, 4 N.H. at 518.  However, in general, title to the strip of land underlying the highway remains in the possession of the fee owner, subject to the public easement.  Baldwin v. Wallace, 84 N.H. 71, 72 (1929); see also Duchesnaye v. Silva, 118 N.H. 728, 732 (1978) ("[A] conveyance of property bounded by a street or highway normally conveys title to the center of the boundary street, unless clearly contrary language appears in the deed.").  Therefore, when a highway is discontinued, the land is no longer encumbered by the public easement.  See Coffin, 4 N.H. at 518-19.

Additionally, we have held that "an owner of land abutting a public street or highway has a private right of access in that street or highway, which includes not only the right to go to and from the land but also the right to have the premises accessible to others."  Berlinguette v. Stanton, 120 N.H. 760, 762 (1980) (quotation omitted); see Tilton v. Sharpe, 84 N.H. 43, 45 (1929).  Indeed, we have observed that the "most important right of the abutter incident to his ownership of property abutting on a street is his right of access," meaning, "his

4

right of ingress and egress." Sharpe, 84 N.H. at 45-46 (quotation and ellipsis omitted) (observing that an abutting owner, subject to municipal regulation, has the right to reasonable use of the abutting street for ingress and egress); see also Cram, 71 N.H. at 52 (explaining that an "abutter has a certain vested right in the highway upon which he is located, as a means of access to his property"); Annotation, Power to Directly Regulate or Prohibit Abutter's Access to Street or Highway, 73 A.L.R. 2d 652, 656-57 (1960); 39 Am. Jur. 2d Highways, Streets, and Bridges § 196, at 776 (2008).

Although the private right of access "may be limited by regulation, it cannot be taken without compensation." Capitol Plumbing & Heating Supply Co. v. State, 116 N.H. 513, 514 (1976); see Sharpe, 84 N.H. at 46. Specifically, when a landowner is "specially damaged, as opposed to suffering harm similar to that sustained by the public in general, he can recover for the destruction or impairment of the right of access." Wolfe v. Windham, 114 N.H. 695, 697 (1974). We have explained that the discontinuance of a public road, "which leaves undisturbed the highway in front of the abutter's premises, and leaves him connection therefrom with the general system of streets, is not a destruction or impairment of any vested right." Cram, 71 N.H. at 51. However, a landowner may recover when a discontinuance renders access "impossible, or impairs it in a substantial manner." Id.; see Wolfe, 114 N.H. at 697; 13 Michael Allan Wolf, Powell on Real Property § 79E.03(3)(a), at 79E-26 to -27 (2020).

Despite these well-established common law principles, our cases are silent as to whether a landowner retains a private right of access for ingress and egress over a highway after it has been discontinued. Further, although the statute governing discontinuances has long included a provision for damages, see PS ch. 72 (1901); RSA 231:49 (2009), it was not until 1943 that the legislature codified a right of access over discontinued highways. See Laws 1943, 68:2. That law provided that, in the case of "highways hereinafter discontinued, . . . no vote of such town shall in any case release the easement of the public to the extent of depriving an owner of property . . . if other access thereto is not available," unless the owner executes a written "release of such right." Id. The statute has since been amended. See, e.g., Laws 1949, 13:1. Currently, the statute, which authorizes towns to discontinue class IV, V, or VI highways, provides: "No owner of land shall, without the owner's written consent, be deprived of access over such highway, at such owner's own risk." RSA 231:43, III. This statutory right of access, however, did not exist at the time of the discontinuance of Bowker Road.

Prior to 1943, neither our case law nor statutes explicitly addressed whether a landowner may be permanently deprived of access to property as a result of the discontinuance of a public highway. However, our case law demonstrates that the right of access to one's property is fundamental to property ownership. See Sharpe, 84 N.H. at 45 (explaining that a landowner's

right of access is the "<u>most important right</u> . . . incident to his ownership of property abutting on a street" (emphasis added)); <u>Cram</u>, 71 N.H. at 52.

Moreover, more recently, we have implicitly recognized an easement right of access over a discontinued highway. In <u>Cote v. Eldeen</u>, 119 N.H. 491 (1979), the parties owned adjacent tracts of land. <u>Cote</u>, 119 N.H. at 492. A discontinued highway crossed the defendants' land and led to a gravel pit located on the plaintiffs' land. <u>Id</u>. The plaintiffs had built an alternative, albeit less convenient, access road across their own land, but claimed an easement to haul gravel and wood products over the discontinued highway. <u>Id</u>.

After the defendants attempted to block the discontinued highway, the plaintiffs obtained a temporary injunction restraining the defendants from interfering with the plaintiffs' use. <u>Id</u>. at 492-93. Following a hearing on the merits, the parties entered into a stipulation that allowed the plaintiffs restricted use of the road. <u>Id</u>. at 493. When the parties disagreed as to the meaning of the stipulation, the trial court imposed restrictions on the plaintiffs' use of the discontinued highway. <u>Id</u>. On appeal, the plaintiffs challenged those restrictions, and the defendants challenged the trial court's recognition of the plaintiffs' easement right. <u>Id</u>. at 492. The defendants withdrew their appeal; thereafter, we ruled that, regardless of whether the easement over the discontinued highway arose by prescription or as a result of the discontinuance, the trial court's imposition of restrictions was a proper application of the rule of reason. <u>Id</u>. at 492-93.

With this background in mind, we now address whether, under the common law, a landowner whose property has no frontage on a public highway has an easement over an abutting discontinued highway to access the landowner's property. Under the rule adopted by a majority of jurisdictions, the discontinuance of a public highway does not extinguish the landowner's easement to the extent that the easement is "necessary for ingress and egress." <u>Mason v. State</u>, 656 P.2d 465, 468-69 (Utah 1982), <u>superseded by statute as stated in</u> <u>Falula Farms, Inc. v. Ludlow</u>, 866 P.2d 569, 571-72 (Utah Ct. App. 1993) (quotation omitted); <u>see</u> <u>Rexroat v. Thorell</u>, 433 N.E.2d 235, 238 (Ill. 1982) ("It is thus recognized that the only easements which survive or arise" from a discontinuance "are those reasonably necessary for means of ingress and egress."); <u>Hylton v. Belcher</u>, 290 S.W.2d 475, 477 (Ky. Ct. App. 1956) (explaining that, if the highway at issue had "been legally abandoned, the abutting property owner still retains a private easement over the roadbed to the extent that it is required to allow him a reasonable means of ingress and egress"); <u>LeSatz v. Deshotels</u>, 757 P.2d 1090, 1092-93 (Colo. App. 1988) (articulating rule set forth in <u>Rexroat</u>, 433 N.E.2d at 238); <u>cf.</u> 7 Jon W. Bruce & James W. Ely, Jr., <u>The Law of Easements and Licenses in Land</u> § 10:18, at 716 (Spring 2020 ed.) (describing the "generally accepted view" that a landowner's private easement over a public highway "survive[s] the public's abandonment or vacation of the way"); <u>see also</u> 39A C.J.S. <u>Highways</u> § 195, at 689 (2014)

6

("abandonment of a public road does not affect the abutting property owners' private right to use the road for ingress and egress"); 11 Eugene McQuillan, The Law of Municipal Corporations § 30:194, at 254 (3d ed. 2018) ("Although . . . the discontinuance of a street extinguishes the public rights in the use of land forming the bed of the street, private easements are not affected necessarily by the discontinuance of public rights . . . .").

The "measure of 'necessary'" presents a question of fact: "the landowners [do] not need to show that there [is] no other means of access, only that the alternative access imposed measurable hardship that was unreasonable under the circumstances." Mason, 656 P.2d at 469. This approach is consistent with New Hampshire's recognition of an owner's private right in an abutting public highway and the right to receive compensation when discontinuance of an abutting highway substantially obstructs a landowner's access to property. See Sharpe, 84 N.H. at 45-46; Cram, 71 N.H. at 51-53.

By contrast, the defendants urge us to follow the lead of a minority of jurisdictions — specifically, the courts of Maine, Connecticut, and Massachusetts — which do not recognize a landowner's right to retain an easement of access to landlocked property over a discontinued highway. See Tighe v. Town of Berlin, 788 A.2d 40, 44 (Conn. 2002); Nylander v. Potter, 667 N.E.2d 244, 247 (Mass. 1996); Warchalowski v. Brown, 417 A.2d 425, 428 (Me. 1980). The defendants argue that these jurisdictions "have a similar legal tradition as New Hampshire" — in that they recognize, as do we, that generally an abutting landowner owns the land to the middle of a public highway, and the fee under a public highway reverts to the abutting landowners up to the middle of the highway upon discontinuance, see Duchesnaye, 118 N.H. at 732 — and, therefore, we must reach the same conclusion. We disagree. The fact that we agree with this general principle does not bear on whether a landowner has the nonpossessory right to traverse the land of another for access to property.

We decline the defendants' invitation to adopt the reasoning of these courts. The Maine case is based upon the court's prior interpretation of a statute that has since been repealed. See Warchalowski, 417 A.2d at 428; see 23 Me. Rev. Stat. § 3004 (1964) (repealed 1975). The Connecticut case is based upon prior Connecticut cases that have no New Hampshire analog. See Tighe, 788 A.2d at 44 (relying upon Luf v. Town of Southbury, 449 A.2d 1001, 1006 (Conn. 1982), to explain that the discontinuance of a highway "extinguished both the public easement of travel and the private easement of access") (quotation omitted)); see also Rudewicz v. Gagne, 582 A.2d 463, 465-66 (Conn. App. Ct. 1990) (applying the common law as it existed in 1910, when the road at issue was discontinued).

The Nylander case reflects a policy decision made by the Massachusetts Supreme Judicial Court. The court rejected the theory that abutters retain a

private easement of travel over a discontinued highway to access their property "because an easement founded solely on the fact that land abuts a former public way would leave no indication in the public records and could prove disruptive to the title examination systems of this Commonwealth." Nylander, 667 N.E.2d at 247-48.

Although the defendants urge us to adopt the same approach, we decline. Doing so would be inconsistent with our common law, which recognizes the right of a landowner, incidental to the ownership of land, to have reasonable access for ingress and egress. See Sharpe, 84 N.H. at 45-46; Cram, 71 N.H. at 51-53; see also Cote, 119 N.H. at 493. Indeed, in articulating a landowner's right to use a public highway, we have stated: "The doctrines of reasonable necessity, reasonable care, and reasonable use prevail in this state in liberal form, on a broad basis of general principle." Sharpe, 84 N.H. at 46. We do not agree with the approach of the Massachusetts Supreme Judicial Court, which could, as a result of a discontinuance of a town highway, leave land inaccessible. See Sharpe, 84 N.H. at 45-46; Cram, 71 N.H. at 51-53.

Because, absent a statutory right of access as first codified in 1943, the discontinuance of a highway could leave a landowner without reasonable means to access the property, we hold that an easement exists over a discontinued highway when the easement is reasonably necessary for access. See Rexroat, 433 N.E.2d at 238. We find this narrow rule to be consistent with the common law right, incidental to ownership, of a landowner to access his or her property. See Sharpe, 84 N.H. at 45. In so holding, we do no more than explicitly recognize an important property right that we implicitly recognized long ago. See Cote, 119 N.H. at 493.

Here, as was apparently the case in Cote, the plaintiff argued in the trial court that his easement arose either by prescription or as a matter of law, because the road was discontinued in 1898. See id. at 492-93. The trial court did not address the prescriptive easement argument. In addition, although the trial court described the property as "landlocked," it made no finding as to whether an easement over Bowker Road is reasonably necessary to access the plaintiff's property. Accordingly, we vacate the trial court's determination and remand the case for the trial court to determine, in the first instance, whether an easement over Bowker Road is reasonably necessary to access the plaintiff's property.

Having addressed the defendants' argument in their cross-appeal, we now turn to the issues raised by the plaintiff in his appeal inasmuch as they may arise upon remand. See Auger v. Town of Strafford, 156 N.H. 64, 67 (2007).

The plaintiff first challenges the trial court's determination as to the width of the easement. He argues that the trial court erred when it relied upon

the evidence at trial and its observations of Bowker Road during the view. He argues that the width of the easement is controlled by the written memorialization of the selectboard's vote in 1766 to lay out Bowker Road, which provided that the highway be "three rods wide." He contends that the trial court should have treated this record as if it were a deed, and relied upon the intent of the selectboard as expressed in the writing. See Stowell v. Andrews, 171 N.H. 289, 301 (2018). We disagree.

When determining the scope of an easement created by an express provision of a deed, we look to the terms of the deed to construe the parties' intent. See Mansur v. Muskopf, 159 N.H. 216, 221 (2009). However, the plaintiff does not have an express easement, and the handwritten notes of the selectboard's decision in 1766 to lay out a road do not constitute a deed. Accordingly, the trial court was not required to rely upon the 1766 document to determine the easement's width.

The plaintiff argues that the trial court, in determining the width of the easement, improperly gave weight to "three historical maps" — two Town tax maps and a subdivision map — contending that they do not provide accurate representations of the width of the easement. It is within the province of the trial court to accept or reject, in whole or in part, whatever evidence was presented. Cook v. Sullivan, 149 N.H. 774, 780 (2003). Thus, we defer to the trial court's judgment on such issues as the weight to be given evidence. Id.

Furthermore, the plaintiff's reliance upon the New Hampshire Department of Transportation's "Suggested Minimum Design Standards for Rural Subdivision Streets," which recommend a minimum width of 50 feet for rights-of-way, is misplaced. The trial court was not bound by these contemporary standards in determining the width of a private easement. See New Hampshire Municipal Association, A Hard Road to Travel: New Hampshire Law of Local Highways, Streets and Trails 57 (2015) ("[F]or older roads, the best evidence of width is the evidence on the ground, especially stone walls.").

As to the trial court's limitation that the easement can be used only for residential and agricultural purposes, the plaintiff argues that the limitation "was unnecessary as such restriction is currently in line with" the Town's zoning regulations. He contends that, "[i]n placing this unneeded restriction, future owners may be required to return to the Courts for relief should Zoning classifications evolve."

It is well established that the reasonable use of an easement over a discontinued highway, whether resulting from a discontinuance, by prescription, or by operation of statute, is governed by the rule of reason. See Cote, 119 N.H. at 493-94 (applying the rule of reason to determine the reasonable use of an easement the plaintiffs argued had been created by either prescription or the discontinuance of a highway); see also Balise, 170 N.H. at

9

526 (applying the rule of reason to an easement created under RSA 231:43, III). "The rule of reason applies at two points in the analysis of easements." Heartz v. City of Concord, 148 N.H. 325, 331 (2002). The first point — in which we use the rule to interpret and give meaning to general or unclear terms in the deed language granting an easement — applies only to an express easement, which is not at issue here. Id. "Second, irrespective of the deed language, we use the rule to determine whether a particular use of the easement would be unreasonably burdensome." Id. "The application of this rule raises a question of fact to be determined" by considering "all the surrounding circumstances, including the location and uses of both dominant and servient estates, and taking into consideration the advantage to be derived by one and the disadvantage to be suffered by the other owner." Sakansky v. Wein, 86 N.H. 337, 339 (1933). "We will not substitute our own judgment for that of the trier of fact if it is supported by the evidence, especially when he has been assisted in reaching his conclusions by a view." Cote, 119 N.H. at 494 (quotation omitted).

The plaintiff does not challenge the trial court's reliance upon the historical use of Bowker Road in determining that the use of the easement is limited to residential or agricultural purposes. Rather, he faults the trial court for limiting the use of the easement despite the possibility that the Town may change the zoning regulations to allow more than residential and agricultural activity in that area. The reasonable use of an easement, however, is not dictated by local zoning regulations. Rather, as we have explained, it is governed by the rule of reason, which the trial court applied here. See Cote, 119 N.H. at 493-94. Accordingly, we find no error in the trial court's limitation on the use of the easement. Indeed, as the plaintiff acknowledges, in the event that circumstances change, the trial court's decision does not preclude him, or future owners, from seeking relief. See Nadeau v. Town of Durham, 129 N.H. 663, 667-68 (1987) (explaining that the court may consider "any changed circumstances which have occurred" in determining the reasonable use of an easement).

We briefly address the plaintiff's remaining arguments. He argues that the trial court erred when it imposed liability upon him for any injuries that may occur on Bowker Road when it stated that he "may be held liable for anyone injured along the right of way." We do not read the court's order as imposing liability on him. The interpretation of a trial court order presents a question of law for this court, which we review de novo. See Choquette v. Roy, 167 N.H. 507, 513 (2015). As the defendants correctly note, the trial court's observation is not a binding legal determination; rather, it simply warns the plaintiff of potential consequences that could result should he remove the gate. Indeed, by stating that the plaintiff "may be held liable," the trial court implied that liability would not be determined until after an injury. (Emphasis added.)

10

Finally, the plaintiff argues that the trial court erred when it ruled that, as a result of the 1972 vote, Bowker Road is subject to gates and bars. We agree. The 1972 vote was conditional — it made several town highways subject to gates and bars, but only "if they have not already been discontinued." Because Bowker Road was discontinued in 1898, it was not affected by the 1972 vote, and, therefore, it is not subject to gates and bars.

In sum, we hold that, when a highway laid out over private land was discontinued prior to enactment of a statutory right of access, see RSA 231:43, III, a common law easement exists over the discontinued highway if the landowner demonstrates that the easement is reasonably necessary for ingress and egress to the property. We affirm the trial court's application of the rule of reason in determining the nature and scope of the easement, and reverse the trial court's determination that Bowker Road is subject to gates and bars. We remand to the trial court to determine, in the first instance, whether the plaintiff can establish that an easement over Bowker Road is reasonably necessary for ingress and egress to his land.

Vacated and remanded.

HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.